[PHILADELPHIA, FEBRUARY 11TH, 1839.]

## INNES'S ESTATE.

### APPEAL.

1. Under the acts of assembly of 11th March, 1836, 14th June, 1836, and 16th June, 1836, the Courts of Common Pleas have no jurisdiction over trusts created by will and vested in executors or administrators, whenever such executors and administrators are amenable to the Orphans' Court.

2. But where a petition was presented to the Common Pleas, in November, 1835, by a female legatee, for whose benefit a sum of money had been bequeathed to the executor, and the Court decided that it had no jurisdiction, and an act of assembly was passed, which continued in force former acts, so far as might be necessary to carry into full effect proceedings not consummated at the times when the said acts came into operation, after which a new petition was presented by the same legatee, and the Court of Common Pleas dismissed the trustee, the Supreme Court on appeal affirmed the decree.

THIS was an appeal from a decree of the Court of Common Plea for the City and County of Philadelphia, in the matter of the estate of Joseph Innes; the proceedings in relation to which were as follows:—

On the 28th of November, 1835, the petition of Margaret Murphy was presented to the said Court, setting forth that her uncle, Joseph Innes, by a codicil to his last will and testament, dated the 4th of March, 1834, and duly proved on the 1st of April in the same year, made the following bequest, viz., " I bequeath to Margaret Murphy, my niece, the sum of $500, to be paid to her by my executor, at such times as he in his judgment may think her circumstances may require, so that she may not suffer for want so long as the said fund or sum of $500 may last;" and of his will appointed his son Samuel Peter Innes sole executor, who took upon himself the execution of the will; that the petitioner was in a state of destitution and suffering for want of the means of subsistence, and that she had repeatedly applied to the said Samuel Peter Innes for relief out of the said fund, but had been denied any part of it.

The answer of Samuel Innes, the executor, admitted the execution of the will, and the bequest stated in the petition, and also that

(Innes's Estate.)

adequate funds had come to his hands, but alleged, that the intention of the testator was to give him a discretion in respect to the application of the legacy, which was meant for the personal benefit of the legatee, independently of her husband. The respondent denied that the petitioner was in want, and averred that her husband was able to provide the means of living, and that he (the respondent) had tendered to her sums of money at different times.

After a hearing of the case, the Court on the 10th of December, 1835, dismissed the respondent, and appointed Patrick Murphy trustee in his place. This decree was afterwards reconsidered and annulled. Margaret Murphy then brought an action in the District Court for the City and County of Philadelphia, to December term, 1835, in the name of her husband and herself against Samuel Peter Innes, to recover the amount of the legacy.

On the 28th of March, 1836, Margaret Murphy presented another petition to the Court of Common Pleas, of a similar tenor with the former petition, and setting forth additional circumstances to show destitution and want.

An answer was filed by Samuel Innes, on the 2d of April, 1836, similar to the former answer. Evidence was taken on both sides; and after a hearing, the Court, on the 14th of January, 1837, made a decree dismissing Samuel P. Innes from the trust created in the will, in respect to the legacy of Margaret Murphy, on the discontinuance of her suit in the District Court, and appointed Patrick Murphy trustee in his place, and approved of the sureties offered.

From this decree an appeal was taken by Samuel Peter Innes, and by the residuary legatees who were made parties, and the following specifications filed :—

" 1st. Margaret Murphy, by bringing suit in the District Court for the recovery of the legacy, made election of a remedy, and had no right, during the pendency of said suit, to the decree of dismissal, &c.

2. The Court had no power to dismiss the appellant before a refunding bond had been given by the legatee, nor for a cause that occurred before giving such refunding bond, nor for the matters alleged in the petition, the proceedings not being pursuant to the acts of assembly, &c.

3. There was no oath showing any of the circumstances for which an assignee may be dismissed by the 4th section of the act of the 24th of March, 1818, made prior to issuing the citation.

4. The trust is created by will. The right of the legatee to have

(Innes's Estate.)

payments of the money, is contingent and dependent on the occurence of circumstances, of which the legatee never gave the executor due notice.

5. The obligation of claiming the payments, and of showing the liability of the executor, rested upon the legatee, as a prerequisite to her right to have payments made to her.

6. The legacy is contingent, and the residuary legatees of the testator were parties in interest, and entitled to be heard on the application made by them.

7. The executor was not guilty of neglecting the duties of his trust. The Court erred in taking cognizance of the case, and in dismissing the executor from the trust, and in appointing Patrick Murphy in his place."

Mr. *Kennedy* and Mr. *Meredith*, for the appellants.

Whether the legacy was vested or contingent, it belonged to the husband of the legatee. There was no provision for her separate use. *Siter's Case*, (4 *Rawle*, 468.) *Griswold* v. *Fenniman*, (2 *Conn. Rep.* 564.) The Court ought not to have dismissed the trustee without giving him an opportunity of paying, and taking a refunding bond. He was not in default, since they had never tendered a refunding bond. A decree was made in 1835, on the idea that the Common Pleas had jurisdiction, but when the decision of this Court in *Martzell* v. *Stouffer*, (3 *Penn. Rep.* 398,) was produced, the Court reviewed its decree, and annulled it. An act of assembly was then passed, which declared that the provisions of certain former acts should be continued in force, so far as necessary to carry into effect proceedings commenced under them. A new petition was then presented to the Court of Common Pleas, who made the decree appealed from. The acts of 11th March, 1836, 14th June, 1836, and 16th June, 1836, clearly deprive the Common Pleas of jurisdiction in cases of trusts, where the trust is to be executed by an executor *virtute officii;* and so this Court decided in *Wimmer's Appeal*, (1 *Wharton's Rep.* 66.) This was not a trust distinct from the ordinary duty of an executor. The Orphans' Court is the most convenient tribunal for the direction of trusts of this kind.

Mr. *Perkins, contra.*

The answer admits all that is necessary to authorise the interference of the Court. An exception cannot be made here which was not made below. The defendant came in and admitted jurisdiction. The words of the will created a plain trust. The act of 1837 gave jurisdiction in express terms, and the petition afterwards presented was only a renewal or continuance of the former petition.

The opinion of the Court was delivered by

(Innes's Estate.).

SERGEANT, J.—The principal question in this appeal is, whether the Court of Common Pleas had jurisdiction, so far as to authorise them to dismiss the executor from his trust, and appoint another person trustee in his place ; and it is a question which is involved in considerable perplexity, by the frequent changes which have taken place in our legislation, within a few years, in respect to the exercise of the equitable jurisdiction of the different Courts over trusts and trustees.   A careful examination of these different acts is necessary to ascertain the state of the law when the proceedings now before us took place in the Court of Common Pleas.

The act of 24th of March, 1818, (*Purd. Dig.* 1830, p. 62,) was the commencement of the modern system of equity jurisdiction in Pennsylvania, and it related solely to voluntary assignments by debtors for the benefit of creditors, and to trustees of insolvent debtors appointed by the Courts.  It is the first of our statutes which gave power to the Courts to proceed against such assignees or trustees, by compelling them to answer interrogatories on oath, and to dismiss them from their trusts, and appoint others in their stead.  By the 4th section of this act, where such assignee was made to appear, on oath or affidavit, to the *Court of Common Pleas* of the proper county, to be in failing or insolvent circumstances, or was about to remove, or was wasting or mismanaging the estate committed to his care, or was neglecting to perform the duties of the trust, that Court was authorised to direct security or surety to be given, or to dismiss him and appoint another.   Five years afterwards, the benefit of these provisions was carried farther.  By the 1st section of the act of 29th March, 1823, (*Ib.* 64,) the 4th section of the above act was extended to all cases where any estate real, personal or mixed, had been or might be conveyed, assigned or transferred to any person or persons in  trust, either for *femes covert*, minors,  or others.   This provision gave to the Court of Common Pleas of the proper county a general jurisdiction over persons to whom estates were conveyed in trust for others.  But the extent to which this jurisdiction was to be carried became a subject of inquiry before the Supreme Court in May, 1832, in the case of *Martzell* v. *Stouffer*, (3 *Penn. Rep.* 398,) and it was held, that the act did not apply to the case of a trustee appointed under the provision of a will, but was confined to trusts created by conveyance, assignment, or transfer; the Court intimating that, in their opinion, the legislature ought to vest in the Courts full power in all cases of trust, as well of fraud and accident.

No legislation had taken place in the meantime on the  subject of the jurisdiction of the Courts of  Common Pleas in dismissing trustees; although acts were passed on the 22d of March, 1825, and the 14th of April, 1828, (1  *Purd. Dig.* 1830, p. 858,) and 21st of March, 1831, giving to the Supreme, Circuit, and District Courts, and Courts of Common Pleas, authority in equity in cases of trusts,

so far as regarded the appointment of trustees, their discharge on their own application, and settlement of their accounts.   To remedy the defect pointed out in *Martzell* v. *Stouffer*, the twelfth and thirteenth sections of the act of 11th of March, 1836, (*Stroud's Purd.* 947,) was introduced, that act being a supplement to the act of 28th March, 1835, establishing the District Court of the City and County of Philadelphia.   By the twelfth section, the provisions of the act of 29th of March, 1823, are extended to all cases where any estate real or personal hath heretofore been, or may hereafter be devised or bequeathed in trust, either for *femes covert*, minors, or others, *by any last will or testament*, as fully and effectually as if such trust have been created by any other instrument of conveyance : and the thirteenth section extended the provisions of the act of 24th of March, 1818, and of its supplement, to all cases of trusts created by any instrument in writing, or by *any last will and testament*, so far as to authorise any *cestui que trust*, or cotrustee, to compel the trustee, or cotrustee, to settle his accounts.

Thus then, it would seem, cases of trusts created by will were for the first time placed within the jurisdiction of the Courts of Common Pleas, so far as concerned their power to dismiss trustees, when the cases provided for occurred.   But in about three months, another change in legislation took place ; for in the act of 14th of June, 1836, consolidating former acts relating to assignees for the benefit of creditors and other trustees, a distinction is made between the case of a trust created by will and *vested in an executor or administrator*, and other trusts : the jurisdiction over the former being taken away from the Common Pleas, and reserved to the Orphans' Court ; the latter being probably considered as the preferable tribunal to entertain complaints against executors and administrators, and to supervise trusts reposed in them *virtute officii*, which are often accompanied with qualities in some respects different from ordinary trusts.   It was desirable also to prevent the clashing of jurisdictions which might result from enabling the Court of Common Pleas, a common law tribunal, to take cognizance of such cases.

Accordingly, after re-enacting, with some alterations, the provisions contained in former acts, the 15th section of the act of 14th June, 1836, (1 *Stroud's Purd.* 942,) enacts that " whenever any assignment, conveyance, or transfer, (excepting assignments, or transfers for the benefit of creditors, as herein-before mentioned,) shall have been made, or shall hereafter be made, by deed, *will*, or otherwise, of any estate, real, or personal, to any person or corporation, in trust or for the use or benefit of any person, or association of persons, or corporation ; also, whenever any trust shall arise by operation or implication of law, the Court of Common Pleas of the county in which such trustee shall have resided at the commencement of the trust, or if such trustee be a corporation, in which such corpo-

(Innes's Estate.)

ration is situate, or in which its principal officers shall have resided, as aforesaid, shall exercise the jurisdiction and powers given by law in regard to such trust : *Provided,* that nothing herein contained shall extend to trusts created by will, and *vested in executors or administrators,* either by the words of the will, or by the provisions or operations of law, whenever such executors or administrators are by the existing laws amenable to the Orphans' Court."

By force of this proviso, the power of the Court of Common Pleas in a case like the present, was taken away, if the executor was amenable to the Orphans' Court. That he was, would seem to be apparent on consulting the act of 29th of March, 1832, respecting the Orphans' Court, (*Stroud's Purd.* 759,) sections 4, 14, 22, 23, 24, and the act of 24th of February, 1834, (*Ib.* 390,) respecting executors and administrators and legacies, sec. 47, and the act of 16th of June, 1836, (*Stroud's Purd.* 222,) sec. 19, respecting the jurisdiction of the Orphans' Courts, and other corresponding provisions, by which the jurisdiction of the Orphans' Court is traced out, a remedy is afforded to recover legacies there, and an executor mismanaging the estate, may be proceeded against. The present seems to be the case thus provided for, of a trust annexed to the office of executor, which he accepts by taking letters testamentary, and is bound as executor to fulfil, and is amenable to the Orphans' Court as executor, for the non-performance of that as well as other trusts imposed by the will. Indeed it is obvious, that the severance of the trustee in this case from the trust, would be a severance of the trust from the office of the executor, which ought not to be, as it is vested in the party in that capacity, and should follow the office. The proper jurisdiction is the Orphans' Court, as constituted by our laws, and the subject is peculiarly adapted to the equitable jurisdiction of that tribunal, the executor being directed to pay over the legacy at such times as circumstances might in his judgment require, so that the legatee might not suffer for want, thus holding a trust accompanied with a power, liable to the supervision and control of that Court in its exercise.

It follows from this review of the acts of assembly, that no act of assembly existed giving the Court of Common Pleas jurisdiction in the case before us, till the act of 11th March, 1836, and that the provisions of this act on the subject were superseded by the provisions of the act of 14th June, 1836, and its jurisdiction so curtailed by the proviso in the 15th section, as no longer to embrace the case. The latter of these two acts must be considered as repealing the former, wherever it supplies its enactments, and declares that they shall no longer embrace the case in question. It contains no clause preserving cases pending in the Court of Common Pleas at the time of its passage, and if the statute was repealed, those proceedings became invalid. It appears that they were commenced in the Common Pleas, on the 5th December, 1835, when that Court

(Innes's Estate.)

had not jurisdiction, and were afterwards annulled by the Court. When it first obtained jurisdiction by the act of 11th March, 1836, the proceedings were resumed. This act terminated in June, 1836. The decree was made in January, 1837, long after the act of March 1836, had been virtually repealed.

The defect, however, thus existing, was cured by another act of legislation on the subject. The 11th section of the act of 4th April, 1837, entitled "An act further to incorporate the district of the Northern Liberties," enacted that the provisions of the act relating to assignees, for the benefit of creditors, and other trustees, shall be, (among others,) continued in force, so far as is necessary to carry into full effect any proceedings not consummated at the times when these acts came into operation: and all proceedings since the passing of these acts, which had taken place in conformity with prior existing laws, shall be deemed and taken to be good and valid to all intents and purposes. These proceedings in the Common Pleas, were in conformity with the act of 11th March, 1836, existing at the time when the act of 13th June, 1836, was passed, and were not then consummated. They are therefore revived and confirmed by this section.

Decree affirmed.