## ₁ The Commonwealth *against* Barnitz.

A testator having bequeathed a sum of money which he directed his executors to invest, and apply the proceeds for the maintenance and support of his daughter; the executors renounced, and letters of administration, with the will annexed, were granted by the register; the administrators thus appointed settled their accounts and were discharged by the orphans' court, who appointed another administrator *de bonis non*, with the will annexed; after which, upon the petition of the legatee, the court of common pleas appointed a trustee to manage the trust fund created by the will: *Held*, that the trust was confided by the will to the executors, and upon their renunciation the duties of it devolved upon the administrators with the will annexed, and after their discharge, upon the administrator *de bonis non*, and that the court of common pleas had no power to appoint a trustee under such circumstances.

ERROR to the common pleas of *York* county.

This was an action of debt by the commonwealth, for the use of William Hymes, against Jacob Barnitz, founded upon an administration bond, in which the following facts were found:

On the 21st day of December 1810, Francis Hymes made his last will and testament in writing, wherein he bequeathed, amongst others, as follows, viz.—"Item. I give to my daughter Salome the equal one sixth part of the remainder of my estate, in part of which I give unto her the house and part of the lot No. 201, &c., to be part of her legacy; the *remainder* that will be coming to her, it is my will that it *be put out on interest*, and that *she have the interest* thereof yearly, during her natural life; and that, after her decease, all shall come to her children; and it is my will, that if my daughter Salome should become sick, or infirm, so that the interest hereinbefore allotted to her would not be sufficient to maintain her, *then my executors shall give her such part of the principal as they may think proper;* and further, it is my will that, after the decease of my beloved wife, all the property, or which shall then be remaining, of which I have hereinbefore bequeathed to her, shall be sold, &c., and equally divided between my six children," &c.  The said testator appointed George Nace and George Hymes executors of his said last will and testament, and afterwards died, and his said will was duly proved and recorded on the 9th day of January 1811.  The said George Nace and George Hymes afterwards, to wit, on the 19th day of January 1811, renounced the duties enjoined upon them in and by the said will, and letters of administration, with the will

[The Commonwealth v. Barnitz.]

annexed, were granted to Henry Shultz and Jacob Barnitz, the defendants, who, on the same day, entered into a bond in common form, with security, and afterwards, on the 4th day of February 1811, the said administrators made, signed, and filed, an inventory of said estate, which is made part of this case.

On the 22d day of May 1812, the said administrators settled an account of their administration, showing a balance in their hands of 10,666 dollars 14 cents. On the 12th day of August 1815 the said administrators settled a second account, showing a balance in their hands, including the former balance, of 10,279 dollars 39 cents. On the 14th day of January 1820, the administrators settled a third account, showing a balance due the heirs, including the former, of 13,692 dollars 35 cents, for distribution according to the will.

On the 13th day of February 1827, on the petition of Henry Shultz and Jacob Barnitz, administrators *de bonis non* of Francis Hymes, deceased, they were dismissed from the said administration, and David Shultz appointed.

The said David Shultz never gave bond and security for the administration of the estate of the said Francis Hymes, agreeably to the acts of assembly in such case made and provided. On the 3d day of August 1830, on motion, the orphans' court aforesaid appointed Luther H. Skinner, Esq. administrator *de bonis non*, with the will of the said Francis Hymes.

On the 1st day of September 1830, the said Luther H. Skinner, Esq. entered into bonds, with sureties, in the register's office of said county, conditioned to administer the goods, &c. of the said Francis Hymes, &c., and letters of administration, with the will annexed, were granted to him by the register.

On the 20th day of April 1837, on petition of the said Salome Eyler, the said orphans' court appointed William Hymes, the plaintiff, her trustee, &c., under the will aforesaid.

On the 1st day of May 1837, the said William Hymes entered into bond, with surety, for the faithful execution of the said trust, agreeably to the requisition of the said court in appointing him as aforesaid.

The sum of 150 dollars of the principal fund in the hands of Henry Shultz, one of the administrators with the will annexed, was paid to Salome Eyler, as per her receipt dated the 20th day of August 1821, on account of her having been sick and infirm, and her necessities requiring the same; released as to the principal by Ann May, a child of said Salome, as per said release. The interest was paid on the legacy of Salome Eyler to April 1, 1830.

The sum charged for Salome Eyler's house, willed to her, being 266 dollars 66 cents, is included in the balance of last account, which she accepted at that price, and which is to be a credit, *pro tanto*, on her share.

The sum of 150 dollars of the moneys in the hands of Henry Shultz was paid by him to William Hymes, at the date of the said

IX.—W*

Hymes's note.   The 150 dollar note from Hymes is dated the 14th day of April 1827.   The widow of Francis Hymes died on the 15th day of January 1826.

This suit was brought upon the above bond of Henry Shultz and Jacob Barnitz, to recover so much as the defendant may be liable to pay in this case; if no liability, then judgment for the defendant.

*Durkee,* president, was of opinion, that the administrator *de bonis non,* with the will annexed, as the proper trustee, was entitled to the fund; that the appointment of a trustee by the common pleas was a nullity, and directed a judgment for the defendant. ·

*Mayer* and *Evans,* for plaintiff in error, referred to the act of 1797, *Purd. Dig.* (1830) 630; 3 *Rawle* 379; 11 *Serg. & Rawle* 252; 5 *Peters* 160.

*Chapen* and *Barnitz, contra,* referred to *Str. Purd. Dig.* 394, sect. 31. 70; act of 1828, *Ibid.* 941, sect. 15; 4 *Whart. Rep.* 182.

The opinion of the Court was delivered by

KENNEDY, J.—This action is founded upon an administration bond, the condition of which is alleged to have been broken by the defendant in his having refused to pay over to William Hymes, for whose use this action was brought, a certain portion of the personal estate, late of Francis Hymes, deceased, bequeathed by him in his last will and testament to his executors' for the benefit of his daughter Salome.   The bequest is couched in the following terms, to wit:  "Item.   I give to my daughter Salome the equal one-sixth part of the remainder of my estate, in part of which I give unto her the house and part of the lot of No. 201, &c., to be part of her legacy.   The *remainder* that will be coming to her, it is my will that it *be put out on interest,* and that *she have* the *interest thereof yearly during her natural life,* and that after her decease all shall come to her children; and it is my will that my daughter Salome should become sick or infirm, so that the interest hereinbefore allotted to her would not be sufficient to maintain her, then *my executors shall give her such part of the principal as they may think proper;* and further, it is my will that, after the decease of my beloved wife, all the property, or which shall then be remaining, of which I have hereinbefore bequeathed to her, shall be sold, &c., and equally divided between my six children, &c."   The testator, after disposing of all his estate by his will, appointed George Nace and George Hymes executors of it.   These gentlemen upon the death of the testator, on the 19th of January 1811, renounced before the register of the county, who thereupon granted letters of administration *cum testamento annexo,* to Henry Shultz and Jacob Barnitz, the defendant, who at the same time gave the bond in suit with the requisite sureties.   The administrators thus appointed, after having settled three administration

[The Commonwealth v. Barnitz.]

accounts at different times before the register, each of which was also approved and confirmed by the orphans' court of the county, on the 13th of February 1827 presented their petition to the same court, praying to be dismissed from the further administration of the estate of the testator. The court accordingly made an order in conformity to their prayer; and thereupon appointed David Shultz administrator *de bonis non;* but in consequence of his declining to give the requisite security, the court, on the 3d of August 1830, appointed Luther Skinner, who, after giving the security required, took upon himself the further administration of the estate; and still continues, it is said, to be the administrator *de bonis non* of it. After these proceedings were all had, Salome, the legatee, made application, by petition, to the orphans' court, on the 20th of April 1837, to have a trustee appointed, who might receive and take charge of the legacy which she claimed under the above bequest; and the court thereupon appointed William Hymes, who afterwards instituted this action for the recovery of it.

A portion of the personal estate of the testator, the interest of which is directed by the testator in his will to be paid by the executors thereof to Salome, the daughter, is admitted to be still in the hands or under the control of the defendant; and the amount of it seems not to be disputed. But then it is objected that Hymes, though appointed a trustee for the purpose, as it would seem, of receiving the fund bequeathed, is not entitled to it. The ground of this objection is, that the trust fund being personal estate, and the trust itself having been committed by the testator to his executors, not *nominatim* but *ratione officii,* it thereby became inseparably connected with the administration of the testator's personal estate; and, consequently, it was not competent for the orphans' court to separate it, and to take it out of the hands of those to whom the administration of the estate was committed for the time being, by the appointment of a trustee. It is certainly apparent, from the terms of the will, that the testator intended the trust should be executed by his executors as such, and the subject of it being a portion of his personal estate would, therefore, seem to have been of a testamentary character, and inseparably connected with the administration of it, which properly belonged to the executors. But the executors, upon their renunciation, thereby ceased to be executors of the will, and to have any right thereafter as such to interfere with the administration of the estate. 1 *Williams on Executors* 155, 156; 3 *Add.* 273. Likewise, seeing that they were only invested with the trust by reason of their being executors, they consequently became divested of it by their renunciation. Accordingly in Keates *v.* Burton, 14 *Ves.* 434, where the testator bequeathed 2000 pounds to a natural son, but directed that his executors might in their discretion, if they saw proper, put the 2000 pounds out on interest, and pay the interest only, as received, to the son; the testator appointed four executors, one of whom died and the remaining

[The Commonwealth v. Barnitz.]

. three renounced; and the Master of the Rolls said, that the power could only be exercised by the executors as such, and having renounced that character, it was not competent for them afterwards to exercise it.    It is true that, in this case, the Master of the Rolls held, that the legatee himself, by the renunciation of the executors, became entitled to receive it, though he had in the meantime become a bankrupt; but then it was because the legacy was given expressly in the first instance to the legatee himself; and in no event were the executors directed or required to put it out on interest, but a discretionary power merely given to do so if they should think proper to exercise it.    They, however, by their renunciation, as it ·was conceived, showed that they did not think proper to exercise it.

Administrators, however, *cum testamento annexo*, are substituted for and come in the place of the executors, at least so far as concerns the administration and disposition of the personal estate of the testator; and after the payment of debts, the will becomes their guide or directory, as to the disposition which they shall make of the residuum of the personal estate, and points out the duties which it is incumbent upon them to perform.    Hence, among other things, they are bound to pay the legacies given by the will, when they have assets sufficient for that purpose; and, in doing so, to observe .the terms and conditions upon which the legacies are directed to be paid, the same as if they were the executors.    In short, the office of an administrator *cum testamento annexo*, is but little different, if at all, from that of an executor, as regards the personal estate.  2 .*Bl. Comm.* 506, 507; 1 *Williams on Executors* 284; *Shep. Touch.* ·474; 2 *Williams on Executors* 601; Hensloe's case, 9 *Co.* 41, *a.* :And I apprehend that, under our acts of assembly, the same, with but little variation, may be said as to the real estate.

The defendant and Henry Shultz, then, by receiving the appointment of administrators *cum testamento annexo*, became invested with the right to take charge of and manage the fund claimed in this action, according to the direction of the will, until they were dismissed from the administratorship of the estate.    After that, however, upon the appointment of the administrator *de bonis non*, and ·his giving the requisite security, they ought to have paid the fund over to the administrator *de bonis non*, because it was still to᷄ be ·regarded as assets belonging to the estate of the testator, and liable -for the payment of any debts which might be made to appear against ·it remaining unpaid.    The duty of settling and paying such debts devolved upon the administrator *de bonis non;* and it would, there- -fore, seem to be proper that he should have the right of receiving the means necessary to enable him to do so.    The great object of the provision contained in the 3d section of the act of 1797, authorising the orphans' court to dismiss the administrators *cum testamento annexo*, upon their own application "*from the duties* ·*of their appointment*," was to relieve them from all further concern with the estate, as they were unwilling longer to perform "*the*

*duties of the appointment.*" The words of the section in relation to this are, that they "with leave of either of the said courts, (meaning the register's or orphans' court, which are mentioned before,) may be dismissed from the *duties of their appointment,* and surrender the *residue of the estate under their care* to such person or persons as the said court may appoint." It must, therefore, be taken that the administrators with the will annexed, when they applied to the court to be dismissed, wished to be dismissed from *all the duties of their appointment;* and the court having, as it was fully authorised to do, granted their request in this respect, imposed upon them the obligation of paying and delivering over to the administrator *de bonis non* all the moneys in their hands, with every thing beside appertaining and belonging to the estate; and this, it may be said, they impliedly, at least, undertook to do; for without it they had no right to ask, nor the court any authority to grant that they should be dismissed; nor could their successors without it perform fully the duties from which they, by their petition, asked to be dismissed. Hence they became bound to pay the fund in question, and the administrator *de bonis non* entitled to receive it, that he might perform the trust in regard to it required of the executors by the will. That executors or administrators dismissed by the orphans' court from the duties of their respective appointments, upon their own application, are bound " to deliver and pay to the successor all and every the goods, chattels, rights, credits, title deeds, evidences and securities, which were of the decedent, and which came to their hands and remain unadministered; and to account with the said successor for all and every the goods, chattels, rights and credits, which shall have been previously administered, and *pay over the balance which shall remain due from them* to the said *successor,*" as fully as if they had been dismissed upon the complaint of some person interested in the estate, under the authority given by the first section of the same act, was decided by this court at the present term, in the case of Wild, administrator *de bonis non* of Wrigley *v.* M'Clure.

The only plausible objection made to this construction of the 3d section of the act is, that " the residue of the estate" mentioned in it, which they are required to surrender, clearly refers to and only includes the unadministered part of the estate; and that this must be taken to mean the unadministered part of it, in its most legal and technical sense, according to the decisions of this court in the cases of Kendall *v.* Lee, 2 *Penns. Rep.* 482; Potts *v.* Smith, 3 *Rawle* 361; Allen *v.* Irwin, 1 *Serg. & Rawle* 555. This construction, however, would seem to militate against the great object intended to be provided for by the act in this section. And besides, the most popular and common understanding in regard to what is meant by having *administered* a decedent's personal estate, is not barely that it has been converted into cash by the executors or administrators, or when it consists of choses in action, wherein money is

[The Commonwealth v. Barnitz.]

to be recovered, that they have recovered all such moneys, but that they have also disbursed and paid out the same, together with all the assets of the estate, which at any time came to their hands in the manner required by law. And such we think was the understanding which the legislature had of it, when they framed and passed the act.

We are, therefore, of opinion that the administrator *de bonis non,* upon his appointment and giving security, became entitled to demand and receive the fund in question here, and that it was not competent for the orphans' court to deprive him of this right, by appointing a trustee, as was done, without any complaint made against him and opportunity afforded of being heard upon it.

Judgment affirmed.