# Hancock's Appeal.

1. The question in expounding a will, is not what the testator meant, but what is the meaning of his words.

2. A testator gave and bequeathed to A., "son of my sister B., only one sixth of such portion as the law would give to said B., and the remaining five sixths to be divided among my other sisters and brothers or their heirs." *Held* (*a*) that he died testate as to the portion of his estate his sister B. would have taken, had she survived him, under the intestate law, and intestate as to the remainder of his estate ; (*b*) that as to this remainder, therefore, A took, with the other heirs at law, his proportionate share under the intestate law.

April 8th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.   CLARK, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of January Term, 1886, No. 115.

Appeal of Thomas E. Hancock from the final decree of said court in the matter of the distribution of the estate of Thomas S. Ellis, deceased, Alfred S. Ellis, and the Fidelity Insurance Trust and Safe Deposit Company, executors.

The facts of the case appear in the following opinion of PENROSE, J.:

The decedent, who was a member of the firm of M. Thomas & Sons, auctioneers, died, as represented to the court, May 25th, 1884, without issue, leaving a widow, Margaret H. Ellis; a brother, George D. Ellis; a sister, Eliza Shuster; a nephew, Thomas E. Hancock, son of a deceased sister, Jane Hancock; nephews and nieces, Elizabeth H. Harner, Rebecca Clifton, Arthur L. Shaw, James W. Shaw, and Mary E. Shaw, children of a deceased sister, Lois Shaw; and nephews and nieces, Lizzie D. Ellis, Mary S. Grigg, Samuel S. Ellis, Harriet L. Klosterman, Thomas S. Ellis, and Alfred S. Ellis, children of a deceased brother, John D. Ellis.

It was stated that Eliza Shuster has since died, viz.: May 14th, 1885, leaving a will, but that no administration upon her estate has been granted in Pennsylvania.

The decedent left a will with codicils, proved May 31st, 1884. The will is as follows:

" I, Thomas S. Ellis, being of sound mind, and of my own free will, give and bequeath to Thomas Hancock, son of my sister, Jane Hancock, only one sixth of such portion as the law would give to said Jane Hancock, and the remaining five sixths to be divided among my other sisters and brothers or their heirs. I appoint Alfred S. Ellis, and The Fidelity Trust and safe Deposit Company, to be my executors.

" (Signed)    THOS. S. ELLIS.

" Philada., April 26th, 1884."

Mrs. Hancock had died, as represented to the court, in 1878. The instruments proved as codicils, but which bore an earlier date than that proved as above, were as follows:

" In case of my death, I, Thomas S. Ellis, bequeath to my sister, Eliza Shuster, wife of the late Aaron Shuster, sixty dollars for every month, for as long as she shall continue to live, and this bequest to cease with her death.

" Also, to my sister, Mary Ellis, one hundred and twenty-five dollars for every three (3) months, for as long as she shall continue to live, and this bequest to cease with her death.

" *In witness whereof*, I have hereunto set my hand and seal, this nineteenth day of May, eighteen hundred and eighty-three.

" (Signed)    THOMAS S. ELLIS."

" $5,000 Market S. R. W. C. This $5,000 and also 100 shares Harrisburgh, Portsmouth and Mount Joy R. R., I direct to be put in trust in the Pennsylvania Company, Lindly Smyth, President, the interest to be paid to Alice McCausland, during her life, the same to go to my heirs at her death.

" (Signed)    THOMAS S. ELLIS.

" January 25th, 1879."

" Joseph A. Young, dead.
" I make this alteration June 11th, 1881.

" (Signed)    THOMAS S. ELLIS."

In addition to the papers proved as above, there was found among the effects of the testator a sealed envelope, upon which was written, " these notes to be given to my brother, G. D. Ellis, and no claim made on him—in other words I present them to him.

" (Signed).    THOS. S. ELLIS.

" February 7th, 1880."

[Hancock's Appeal.]

The notes enclosed in this envelope were three judgment notes of George D. Ellis, George W. Ellis, and John D. Ellis, two dated February 7th, 1880, for $2,300 and $10,370.24 respectively, and one dated January 6th, 1882, for $1,000; also draft of same persons on Thomas S. Ellis, dated June 24th, 1881, to order of M. Thomas & Sons, for $637.50, amounting in all to $14,307.74.

It was agreed by counsel that this should be treated as a testamentary gift of the notes, &c., so enclosed; that the amount should be added to the balance shown by the account, and that George D. Ellis, upon payment of collateral inheritance tax thereon—such tax to be awarded to the Commonwealth—should receive them as legatee.

The widow of testator has elected to take against the will. There will, therefore, be added to the balance of principal shown by the account, composed as there stated, $297,868.68; the notes, &c., above mentioned, amounting to $14,307.74; making $312,176.42.

*        *        *        *        *        *

As the name of Mary Ellis is not mentioned in the list of next of kin, it is presumed, though the fact was not stated to the court, that she died in the lifetime of the testator. The only question which arises is as to the share of the estate to be taken by Thomas E. Hancock, son of the testator's sister, Jane Hancock. It was probably the intention of the testator to exclude this nephew from any portion of his estate, except one sixth of• the share which he would have taken had there been an entire intestacy; but, unfortunately for this view of the case, he has, except to the extent of the gift of the stocks in trust and the annuities to his sisters, confined his testamentary disposition to such portion only of his estate as would have gone to his sister, viz., one fifth, leaving the remaining four fifths to pass under the intestate laws. Part of the estate consists of realty, and it is well settled that an heir at law can only be disinherited by express devise or necessary implication, and that in the construction of a will of doubtful meaning every fair intendment is to be made in his favor: Bender *v.* Dietrick, 7 W. & S., 284; Hitchcock *v.* Hitchcock, 11 Casey, 393; France's Appeal, 25 Smith, 220; Rupp *v.* Ebberly, 29 Id., 141. In Bender *v.* Dietrick (*supra*) the testator gave to each of his daughters by his first wife $50 in two equal annual payments, and no more, "to be paid to my executrix hereinafter named, and no more," and the residue of his estate, both real and personal, to his second wife for life. · It was contended that the gift to the daughters with the words "no more," excluded them from participation in the distribu-

tion of the estate at the death of the widow, and manifested·
an intention that her children should be the residuary lega-
tees.   It was held, however, that while it was not unlikely
that such was the intention, it was not a necessary impli-
cation, and nothing less was sufficient to ·exclude an heir..
The implication is not stronger in the present case. · It must
be confessed that the question is not free from difficulty, and
if the estate consisted only of personalty, it might be that the
legatee would be excluded from coming in as next of kin :
Breton  v.  Vachell, 5 Bro. P. C., 51, 1 P. Wms., 548 ;  though
see  Tavernor  v.  Grindley, 32 L. T. N.. S., 424 ;  Johnson v. .
Johnson, 4 Beav., 318 ;  Gould v. Gould, 32 Id., 391.   But it
is clear, under the authorities cited, that there is no exclusion
so far as the real estate is concerned, and it can scarcely be
that a different rule is to be applied as to personalty where
both pass from the same testator ·or intestate.   There will,
therefore, be awarded to Thomas E. Hancock, under the will
of the testator, one sixth of one fifth of the balances, princi-
pal and income in the hands of the accounts as above, and one
fifth of the remaining four fifths of. such balances to ·him as
next of kin ;  and to the other next of kin of the testator, or·
the representative—appointed under the laws of this Com-.
monwealth—of such as have died since his death, according
to their respective interests, what is left.

A schedule of distribution will be prepared by counsel for
the accountants—securities being distributed in kind—which,
on approval, will be annexed and made part of this adjudica-
tion.

To this adjudication the next of kin respectively filed the
following exception :  The learned judge auditing said account,
erred in awarding to Thomas Ellis Hancock under the will of
the testator, one sixth of one fifth of the balance, principal,
and income in the hands of the accountants, and one fifth of
the remaining four fifths of such balance to him as next of kin.

These exceptions were sustained and the adjudication
amended accordingly, PENROSE J., filing the following
opinion :

No one can doubt that the testator intended to restrict his
nephew to one sixth of one fifth of the estate which would
have passed to him under the intestate laws, and it is only a ·
supposed intestacy as to the remaining four fifths arising from
the failure to make express reference to them, which interferes
with this intention, or prevents it from being carried into effect.
But, it is to be observed, when "the law" gives a share to
one heir, it necessarily, and at the same instant, vests the
shares of all the others ; and this was the idea in the mind of ·
the testator when he said, " I give and bequeath to . . . . .

the son of my sister Jane . . . . . only one sixth of such' portion as the law would give . . . . . , and the remaining five sixths to be divided among my other brothers and sisters, or their heirs." It is as if he had said, " My estate is to pass to those entitled under the intestate law, but my sister's son shall have one sixth only of the share which she would have taken if living, the balance of such share going to my other brothers and sisters." He has expressed himself elliptically, but his meaning is clearly implied, and the literal construction of his language leads to a result precisely the opposite of what was intended. Even, however. if it be conceded that no provision is made with regard to the persons who are to take the other four fifths, it is plain the nephew is not to be one of them. His exclusion is not limited to an aliquot part of the estate, and to permit him to take one sixth of one fifth under the will, and one fifth of four fifths under the intestate law, would be directly in the teeth of what the will itself declares, viz., that he shall have but one sixth " of such portion as " (that is, " whatever ") "the law would give." It is true that an heir, or one taking under the intestate laws, is not to be excluded except by express devise or necessary implication, but it is no less true that an intestacy is not to be permitted, if by any construction of the will it can be avoided ; or, as it is sometimes expressed, " it will be presumed that a testator intended to dispose of his whole estate, unless the contrary appears in clear and unmistakable terms:" Kennard *v.* Kennard, 2 Eastern Reporter, 38 ; Clarkson *v.* Clarkson, 8 Bush., 655 ; Byers *v.* Byers, 6 Dana, 313 ; Ferry's Appeal, 6 Out., 207.

I am entirely convinced that my impressions in this case, while sitting as auditing judge, were erroneous.

Exceptions sustained and adjudication amended accordingly.

From this decree Thomas E. Hancocks took this appeal, assigning the decree for error.

*F. Carroll Brewster* and *Augustus Rudderow,* for appellant.— 1. The first general principle governing the construction of wills as fully settled by authority, is this, viz:—In construing a will the object of the court is to ascertain not the intention simply, but the expressed intention of the testator, *i. e.* the intention which the will itself, either expressly or by implication, declares ; or (which is the same thing) the meaning of the words,—the meaning which the words of the will properly interpreted, convey : Hawkins Wills, 1 ; Shone *v.* Wilson, 9 Cl. & F., 525 ; Collison *v.* Girling, 4 Myl. & Cr., 63 ; Weidman's Appeal, 42 Leg. Int., 338.

2. Touching on the point of unwarrantably extending the

meaning of words, His Honor, Justice MERCUR, in Verner's Appeal, 6 Norris, 87 Pa. St., 427, said, "It is true words may in some cases be supplied to carry out a defectively expressed intent, but not to create another intent where one is distinctly expressed, as here, by the language of the will.. They can be supplied only in cases necessary to give effect to the most unquestionable purpose of the testator:" 1 Redfield on Wills, 470. See also Anabel v. Patch, 3 Pick., 360; France's Est., 25 P. F. S., 220; Bender v. Dietrick, 7 W. & S., 284.

If the devisor had even mentioned the rest or residue of his property (which he has not done), but omitted to say to whom he devised or bequeathed it, he having failed to express his intention, there would be an intestacy as to the residuary real or personal estate: Driver v. Driver, 43 L. J. Ch., 279; Simmons v. Pitt, 8 L. R. Ch., 978; Watson v. Arundel, 10 Ir. R. Eq., 299 and many cases. But he does not mention or refer to the rest or residue of his property.

3. A residue if not disposed of must go to the heirs or next of kin by force of the intestate law: Humble v. Shore, 7 H., 247; Lightfoot v. Burstall, 1 H. & M., 546; Re Bevis' Trusts, 20 W. R., 359; Hetherington v. Longrigg, 15 Ch. D., 635; Savage's Trusts, 50 L. J. Ch., 131.

4. In the case of the will of Louisa Rorer, 7 Philada. Rep., p. 524, the following paper was in question, viz:

. "I do not wish any of my brothers A. W. or James' children to have any of my estate.

"(Signed) LOUISA RORER."

The court (ALLISON, P. J.,) held that mere negative words in a will are not sufficient to exclude the title of the heir, or next of kin, that there must be an actual gift to some other definite object.

5. No matter how comprehensive and express a clause of exclusion in a will may be against an heir at law, and no matter how anxious judges may be to give effect to the intention to exclude him, bound by settled rules of construction, they cannot prevent him from sharing in any property not disposed of by the will. He can only be disinherited by express devise, or necessary implication, and such necessary implication cannot arise unless there be an actual gift to some other definite object with a clear intent to pass the estate into another line of succession. These propositions are fully established by the decisions: Rupp v. Eberly, 29 P. F. S., 141; Hitchcock v. Hitchcock, 11 Cas., 393; Fitch v. Weber, 6 Hare, 51; Sykes v. Sykes, Law Rep., 4 Equity, 200; Ramsey v. Shelmerdine, Law Rep., 1 Eq. Cas., 129; Gould v. Gould, 32 Beavan, 391; Johnson v. Johnson, 4 Beavan, 318; Louisa Rorer's Will, 7 Phila. Rep., 524; Cowles v. Cowles, 3 P. F. S., 175;

Bender *v.* Dietrick, 7 W. and S., 284; Miller *v.* Wilson, 3 Phila. Rep., 343; Zerbe *v.* Zerbe, 2 Leg. Chron., 10; Luce *v.* Harris, 23 Pitts. L. J., 195.

6. The estate of Thomas S. Ellis consists of real and personal property. It is not disputed that an heir at law, or one of them, can only be disinherited, by express devise, or a *devise necessarily implied;* for, as Cruise says, the *title* of the heir being founded on the laws of descent, which are *certain* is not to be defeated by an *uncertain* devise: 1. Ves. and B., 466; Bender *v.* Dietrick, 7 W. & S., 284; Hayden *v.* Stoughton, 5 Pick., 518; Schauber *v.* Jackson, 2 Wend., 13; 2 Binn., 19. "The implication must be so strong that an intention to the contrary cannot be supposed." As Lord MANS-FIELD said in Jones *v.* Morgan, Fearne, C. R., App. No. 3; it must "*leave no room to doubt.*" Also it must arise from the *words;* and there must be an *actual* gift away from the heir.

*M. Hampton Todd,* (*A. P. Douglass, Wendell .P. Bowman* and *Frank S. Christian* with him), for appellees.—1. The Supreme Court of New Hampshire says, ALLEN, J:

In the construction of a devise, the rule of interpretation is the ascertainment of testator's intention. . . . . . That intention is gathered not only from the words of the devise, but as well from the language of the whole will, from the relations of the testator to the persons who are the objects of his bounty, and from surrounding circumstances. The old and arbitrary method of always giving to certain words and phrases a technical and fixed meaning, despite the intention of testator, and of always making the application of artificial rules the test of construction, have often led to gross injustice and the breaking of wills, and do not now prevail: Kennard *v.* Kennard, Eastern Reporter, vol. 2, p. 37.

2. Whenever the intent of testator can be ascertained, this court has repeatedly said, such intent must govern. The latest case being Hulston's Appeal, 8 Out., 364–5.

3. The policy of the law is to give effect to the testamentary dispositions of a decedent and to avoid an intestacy if possible: Clarkson *v.* Clarkson, 8 Bush, 657; Shauber *v.* Jackson, 2 Wend., 56; Lett *v.* Randall, 25 Law Times, O. S., 244.

4. An heir at law cannot be excluded except by devise or necessary implication.

"Necessary implication means not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator cannot be supposed: Wilkinson *v.* Adam, 1 V. &. B., 466; Townes *v.* Wentworth, 11 M. P. C. C., 526.

We rely on the cardinal doctrine of intention; what the

testator intended. We do not mean by intention, conjecture, but that which is to be gathered from what he has written ; and if this can be possibly ascertained, it is to be carried out. Every other rule must give way before this one. Upon this rule hang all the others.

Mr. Justice GREEN delivered the opinion of the court, April 26th, 1886.

The testator had a fashion of making short, isolated bequests of portions of his estate to legatees named, on loose slips of paper, saying nothing whatever about the residue of his estate.

Thus there was found among his effects a sealed envelope upon which was written—" These notes to be given to my brother G. D. Ellis and no claim made on him—in other words, I present them to him.

"(Signed).  THOS. S. ELLIS.

"February 7th, 1880."

Three judgment notes were enclosed in the envelope, and it was agreed by all parties interested that the paper should be treated as a testamentary gift of the notes. It was not for one moment claimed that the gift of these notes excluded Geo. D. Ellis from his share of the residue of the estate, and in point of fact his proper share of the residuary estate was awarded to him not as a legatee thereof but as one of the next of kin under the intestate law.

There was also a legacy, on a loose piece of paper signed by the testator, of certain securities in favor of Alice M. Causland during her life, with remainder to testator's heirs after her death. Of course no one imagined or claimed that the gift of the principal of these securities to the heirs after her death, was all of the estate which "the heirs" were to have, and it is without question that the shares of the residue which the persons described here as "heirs" will take, are entirely unaffected by the legacy of these securities.

Another testamentary paper made by the deceased at another time gave to Mrs. Shuster, a sister, a monthly allowance of sixty dollars during her life, and to another sister, May Ellis, a quarterly allowance of $125 during her life. To this paper the testator set his hand and seal and recited at the beginning of it that it was to operate in case of his death, making it a clear testament. It certainly will not be pretended that these two sisters are to be deprived, by reason of these legacies, of their shares of the residuary estate, though not one word is said in any of the testamentary papers of any residuary estate. On the contrary their distributive shares

therein were awarded to them not as legatees of the residue but as next of kin under the intestate laws.

By another paper, of an undoubted testamentary character, executed at another time Thomas Hancock is a legatee. That paper is in the following words.

"I Thomas S. Ellis being of sound mind, and of my own free will give and bequeath to Thomas Hancock son of my sister Jane Hancock only one sixth of such portion as the law would give to said Jane Hancock and the remaining five-sixths to be divided among my other sisters and brothers or their heirs." In none of these testamentary papers does the testator make any provision in favor of his wife who survived him, and in none of them does he make the least disposition of, or any reference to, the residue of his estate, which was very large, nearly $300.000 in amount.

The question arising is, what interest, if any, does Thomas Hancock take in the residuary estate? It is very certain there is no express gift of the residue, in this paper, to any-body. It is equally certain that in literal terms, the only thing given by this instrument is the portion which the law would give to Jane Hancock, of the testator's estate, if she had survived him. But she was dead, and of the portion she would have had, only one sixth is given to Thomas, her son, and the other five sixths are given to the testator's other sisters and brothers or their heirs. Five sixths of what? Five sixths of something of which the other one sixth is given to Thomas. It is too plain for argument that the fractional parts thus given are parts of the same thing and not of dif-ferent things. The words are, "and the *remaining* five sixths to be divided" &c.—these words necessarily import the five sixths which remain after the previously mentioned one sixth is deducted.

Now it can not be that the subject matter which is thus fractionally divided is any other than one common whole. If by these words, either directly or indirectly, the brothers and sisters take five sixths of the whole residuary estate, it neces-sarily follows that Thomas takes one fifth of the same estate. If on the other hand Thomas takes one fifth only, of his mother's portion, as it would have been if she were alive, then by an equal necessity it follows that the brothers and sisters take the remaining five sixths of that portion. And such we are quite clear is the true construction of this paper. By it Thomas takes one fifth of what would have been his mother's portion, and the brothers and sisters take the remaining five sixths of that same portion. As to the remainder of his property other than the gifts by the other papers, the testator died intes-tate, and it must be distributed according to the intestate law

to the next of kin. We regard this as the plain and obvious meaning of the words employed, and in such cases we do not think courts are authorized to impute a different meaning unless required to do so by some technical rules of construction, which is not the case here.

The title of the appellees to the testator's residuary estate is a title not under the will, by purchase, but under the intestate law by descent. But if the residue goes by intestacy, the appellant is entitled to participate, because he is one of the class who take by intestacy. It is argued however that he is excluded by implication because he takes one fifth of Jane's portion, but if that be so why are not the appellees excluded because they take "the remaining five sixths" of the same portion? The language which is claimed to be exclusive as to the appellant is the only and the same language which gives title to the appellees. If it excludes the one it must for the same reason exclude the others. To hold that the appellant takes one fifth only of Jane's portion, and none of the residue *because* he takes that one fifth, and that the appellees take five sixths of Jane's portion and the whole of the residue *because* they take that five sixths, is an irreconcilable anomaly to us and we are unable to agree to it. In point of fact the residue was awarded to the appellees by intestacy, and the appellant was excluded from it for a reason which if it excludes him necessarily excludes them also, and if it does not exclude them cannot in our judgment, with any fairness of reasoning, exclude him.

> The decree of the Orphans' Court is reversed and the record is remitted with directions to distribute the residue of the estate in accordance with this opinion, the appellees to pay the costs of this appeal.

The appellees moved the court for a re-argument which was refused, Mr. Justice GREEN delivering the opinion of the court, May 24th, 1886.

Perhaps we should have expressed with greater precision than we did the exact interpretation we placed upon the testator's will. It would at least have prevented the misconception of our meaning which seems to have resulted. To our minds it is a necessary and an inevitable inference from the words of the will that the testator intended to die intestate as to four fifths of his residuary estate, and to devise only the one fifth part thereof. There is not a moment's question that such is the *literal* reading of the will. In Weidman's Appeal, 42 Leg. Int., 338, we said (TRUNKEY, J.): "The question in expounding a will is not what the testator meant,

but what is the meaning of his words." Here the testator expressly devises one portion of his estate, and he expressly omits to devise any other part or portion of it. It is true, he describes it as such portion as the law would give to his sister Jane Hancock. But this mode of description can serve but one possible purpose, and that is to ascertain the aliquot part of his estate which the testator intended to devise. For in very truth there is not, and there cannot be, any such thing as "Jane's portion" of his estate. Had she survived him, and had he died intestate, there would have been a subject matter corresponding to the description, and even if he had not died intestate, but left the will in question, there would be much force in the contention of the appellees that she personally would have been excluded from the estate, and the devisees of her portion could have taken only so much of the estate as that portion would represent. But, in point of fact, Jane was dead before the testator, even before the will was written, and hence the testator knew when he wrote it that she never had, and never could have, any portion of his estate whatever.

If the will is to be literally and strictly construed, there is now no subject matter upon which these words of the will can operate, and hence there would be intestacy even as to this. But it is very plain to us that the testator did mean to give that proportion of his estate which Jane's portion would have represented if she had survived him and he had died intestate. That portion would necessarily be uncertain, because the testator could not know which or how many of his brothers and sisters or their heirs would survive him. Hence he could not specify a distinct aliquot part of his estate in figures to pass by this clause. He could only define a method by which the aliquot part could be ascertained. This he did, and as there were a brother and sister, and children of another brother and sister surviving, the number of shares or portions, had Jane survived, would have been five, and the part of the estate disposed of by the will is one fifth. Of this one fifth he gives one sixth to the appellant, and the other, or "remaining" five sixths he directs to be divided among his "other sisters and brothers or their heirs." We cannot see any mystery, doubt or uncertainty in the language of the will. The testator, though a man of intelligence, was not a lawyer, and he expressed himself concisely, but, as we think, with sufficient clearness of meaning.

The learned judge of the court below illustrated his reason for changing his mind as to the interpretation of the will in the following manner: "It is as if he had said 'my estate is to pass to those entitled under the intestate law, but my sis

ter's son shall have one sixth only of the share which she would have taken if living, the balance of such share going to my other brothers and sisters.'" On the theory that this was a true analogy to the will in question, he interpreted the will as though it had been thus written. As a matter of course, if the supposed language were, in truth, analogous to the language actually used, there would be an end of the case, and the conclusion reached would be inevitable. But, in our view, the supposed or illustrative language is in no sense analogous to that of the will, and for this reason : The words, " My estate is to pass to those entitled under the intestate law," are a direct, positive and absolute devise of the *entire estate* to persons readily ascertained, and in such a case there cannot be any residue or any question as to the legatees. The whole estate would go to the heirs, or next of kin, according to the character of the estate, and if there were five shares, four of them would go to the four stocks or their representatives, and the other share would be divided into six parts, one of which would go, by the next succeeding words, to the appellant, and the remaining five to the other four stocks. To treat this language as of equivalent meaning with the real words of the will, and then put the same interpretation upon the real words as must necessarily be put upon the substituted words, is simply begging the whole question. It proves nothing. There are no words in the will which pass the whole estate, and there are none which give, or pretend to give, the residue or any part of it. The other additional thought contained in the opinion is thus expressed : " Even, however, if it be conceded that no provision is made with regard to the persons who are to take the other four fifths, it is plain the nephew is not to be one of them." We are altogether unable to see the correctness of this inference. Here are the words of the will : " I, Thomas S. Ellis, being of sound mind and of my own free will give and bequeath to Thomas Hancock, son of my sister Jane Hancock, only one sixth of such portion as the law would give to said Jane Hancock, and the remaining five sixths to be divided among my other sisters and brothers or their heirs." It is beyond all question that these words bequeath one part of the estate only. That part is to be determined by ascertaining what portion of the estate Jane would have taken if she had lived and the testator had died intestate. As there were five brothers and sisters in all, the portion which the testator manifestly intended to give was one fifth. Of this one fifth he gives one sixth to Thomas and " the remaining five sixths " to the others, and then stops, making no gift of the residue.

To us it seems inevitable that this is the plain, natural,

common sense meaning of the words the testator actually used. But the learned judge convinces himself otherwise in the following manner: "His exclusion is not limited to an aliquot part of the estate, and to permit him to take one sixth of one fifth under the will, and one fifth of four fifths under the intestate law, would be directly in the teeth of what the will itself declares, viz., that he shall have but one sixth of such portion as (that is 'whatever') the law would give." We fail to see how this result would be "in the teeth of what the will itself declares," when the will makes no kind of declaration about the residue. A plain person would understand that the testator meant just what he said, that Thomas was to have one sixth of Jane's portion, and the brothers and sisters were to have "the remaining five sixths of that same portion. As to all the rest of the estate the will says nothing, and therefore it must be distributed as though the testator had died intestate. It is not practicable to say that Thomas was intended to be excluded from the four fifths which compose the residue, *because* he was given only one fifth of *Jane's portion*, unless we are prepared to say that the others are excluded from the same four fifths for the same reason. For it is *Jane's portion* all the time, the gift of a part of which to the appellant is claimed to exclude him from the intestate residue. But *Jane's portion* means the same thing when a part of it is given to one legatee as it means when another part of it is given to other legatees.

To escape this difficulty counsel contend that the other legatees take the residue by testacy, and here is the fallacy, in our judgment. The confusion of ideas comes from the mixing of the intestate residue with the testate, *Jane's portion.* The latter was given by the will, and nothing more was given. Because nothing more of the estate than *June's portion* was given, there was intestacy as to all the rest. This means real intestacy, not an intestacy to fix the shares of the others, and, at the same time, a testacy to exclude the appellant and give the whole of the residue to the appellees. For, in intestacy, the appellant takes, not as the son of his mother, but as the nephew of the testator. It is the degree of his kinship, not the source through which it comes, which places him in the same category with the appellees. With the consequences which flow from intestacy we have nothing to do in interpreting the will. They are the result of the palpable and, as we think, intentional omission of the will to dispose of the residue. To make a testacy of this residue we must put words into the will which are not there, words which not only designate a residue, but designate also the persons who are to

take it.   We have no such power, nor the slightest disposition to claim it.

It is argued, for the appellees, that the distribution contended for by the appellant would produce inequality, and therefore ought not be adopted.  It would not be a sound argument, if it were true, but it is not true.   In point of fact the widow took one half the estate, but in testing the meaning of the will upon its face that circumstance need not be regarded, as nothing was given to her.   The estate distributed amounts to about $300,000.   Of this one fifth, or *Jane's portion*, is $60,000, and by the will the appellant, Jane's only child, gets but $10,000, while the remaining $50,000 are given to his aunt, his uncle, and his cousins.   His aunt and uncle each get $12,500 of his own mother's natural portion if she had been living and the testator intestate, and of these amounts the appellant is disinherited by the terms of the will. But the appellees are not satisfied with this, and therefore they contend that we ought to declare judicially that in order to produce equality of distribution the whole remaining four fifths, to wit, $240,000, should be given to the aunt, the uncle, and the cousins.   If we do, George D. Ellis, Jane Hancock's brother, who stands in no better or more favored position than she in natural distribution under the intestate law, would take, if the will were literally carried out, $60,000, and Eliza Shuster, a sister, the same sum, and Jane Hancock's only child would take nothing.   Out of the whole estate, this natural representative of one fifth would get $10,000, and the other two, each, $72,500.   Or if the widow and all the legatees, except the appellant and his uncle, were dead before the testator, what is called Jane's portion would then have been one half, and of this the appellant would have taken one sixth, being $25,000, and the uncle the remaining five sixths, being $125,000; and as, according to the theory contended for, the appellant is excluded from the residue, and the whole of it actually given by the will to the legatees other than the appellant, the uncle would take the whole of it, to wit, $150,000.   In this event, therefore, the appellant would have received out of the whole estate $25,000, and the uncle $275,000.   And if, instead of the uncle, the only survivor had been one of the cousins, that one cousin would have taken the $275,000, and the appellant the $25,000.   If this is equality we fail to see it.   It is scarcely necessary to add that, as the facts are, each one of the cousins would get a share considerably in excess of the appellant under the decree of the court below as it now stands.   While even such results must be declared if the language of the will requires it, it must not be done in the name of equality when there is

[Saunders *v.* Quigg et al.]

no such language. The election of the widow to take her share reduces the foregoing figures correspondingly, but the proportion remains the same.

Not a solitary reason can be found in any of the testamentary papers in this case for practically disinheriting the appellant, or for supposing that the testator so desired. To accomplish that result a complicated, not to say sophistical, course of reasoning must be resorted to in order to prove by argument, not by testamentary words, the presence of an intent in the mind of the testator, which, so far as we can discern, never had the slightest existence. Sufficient inequality is produced to satisfy every demand of the words used by reading them according to their plain and natural meaning. More than this is not required, and therefore should not be permitted.

In preparing the opinion in this case we did not review the authorities, because it was not necessary. Not one was cited for the appellees which would, in the least degree, have justified us in adopting their construction, while many were cited in the elaborate and exhaustive argument for the appellant—notably Bender *v.* Dietrick, 7 W. & S., 284, and Hitchcock *v.* Hitchcock, 11 Cas., 393—which were highly persuasive by reason of their analogy to the case at bar, we thought it unnecessary to discuss them because the plain words of this will afford a sufficient clue to its meaning.

Re-argument refused.