## APPEAL OF ABBIE M. WOELPPER.

[CHANDLER v. WOELPPER, ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued April 5, 1889—Decided May 27, 1889.<br>[To be reported.]

1. The canon of construction in will cases, that where there is a devise for life with remainder over to survivors, the word, survivors, shall be taken to refer to the period of the testator's death, will not be applied to overrule the plain, actual intent of the testator to refer it to another period.

(a) A testator directed a trustee to pay the income of a share to each of his daughters for life, "and from and immediately after the decease of my said daughters respectively, and as that event happens, I give and bequeath the estate and property of the daughters dying, which shall then be held by the said trustee under this my will, to be equally divided among the surviving brothers and sisters, and the lawful issue of such as may be dead (if any); .... provided, however, that if my said daughters, or either of them, should die leaving lawful issue, the share

of such daughter, so dying, shall go to and be equally divided among such issue, and the lawful issue of such as may be dead."

2. The principal objects of the testator's bounty were his daughters and their issue, and the time he had in mind when their shares should possibly go to any one else, was the death of the daughters, and it was with reference to that time that he designated the surviving brothers and sisters as the ultimate devisees.

3. It is often said, "The question in expounding a will is not what the testator meant, but what is the meaning of his words;" yet by this it was never intended to say that a testator's meaning when apparent can be disregarded, but, that it cannot be got at aliunde by what he might have meant: the search is confined to his language, but the object is still his meaning: per Mr. Justice MITCHELL.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 229 January Term 1889, Sup.•Ct.; court below, No. 870 September Term 1879, C. P. No. 4.

On November 15, 1879, David Woelpper Chandler filed a bill in equity against David Woelpper, George Woelpper and others, for the partition of the real estate of David Woelpper, Sr., deceased.

On the hearing, and as found by the master, *Mr. A. Atwood Grace*, it was made to appear that David Woelpper, Sr., died testate, in Philadelphia, on December 18, 1839, seised of certain real estate in the 13th ward of said city, and leaving to survive him a widow, Mary, and five children, to wit, David, George, Margaret, Mary and Dorothy.

By his will, duly admitted to probate, the testator ordered his executors to sell his real estate, invest the proceeds and pay the income of one third thereof to his widow for life; the other two thirds he divided into five parts, and gave one of said fifth parts to each of his children. The share or portion of Margaret, who was of weak mind, he directed his executors to pay to Lawrence Shuster, trustee of said daughter, to care for, protect and maintain her during life. If she continued during life in such state as to be incapable of taking care of and managing her estate, "then and in that case at her decease I give and bequeath so much of her estate as shall then be remaining to be equally divided among the surviving brothers and sisters and the lawful issue of such as may be dead (if any), such issue

taking only the share thereof which his, her, or their parent would have taken if living, if one person, solely, and if more than one, in equal shares as tenants in common;" and in the event of her restoration to reason, then the trustee was to hold the share of said Margaret upon the same trusts as the shares of his other daughters, Mary and Dorothy.

As to the shares provided for Mary and Dorothy, the testator directed the trustees to pay the income thereof to them for life,

"And from and immediately after the decease of my said daughters respectively, and as that event happens, I give and bequeath the estate and property of the daughters dying, which shall then be held by the said trustee under this my will, to be equally divided among the surviving brothers and sisters, and the lawful issue of such as may be dead (if any), such issue taking only the share thereof which his, her, or their parents would have taken if living, if one person solely, and if more than one in equal shares as tenants in common; provided, however, that if my said daughters, or either of them, should die leaving lawful issue, the share of such daughter so dying shall go to and be equally divided among such issue, and the lawful issue of such as may be dead (if any), such issue taking only his or her parents' share, if one solely, if more than one in equal shares as tenants in common, anything hereinbefore contained to the contrary thereof notwithstanding."

The matter of the partition was so proceeded in that on July 17, 1880, a final decree was entered, confirming the report of the master and commissioner valuing the real estate of the testator and setting apart the same in severalty, excepting two parcels, to wit, Nos. 733, 735 Wood street, which were provisionally withdrawn from the operation of the partition, with leave to any of the parties in interest to apply, after the death of Margaret Woelpper, for any other or further order touching the disposition thereof as might for his or her interest appear and was lawful in the premises.

At the time of the entering of this decree, David Woelpper, had one fifth interest in said premises ; George Woelpper, one fifth; the trust estate of Margaret Woelpper one fifth ; the trust estate of Dorothy Poppal, one fifth; and D. Woelpper Chandler and George W. Chandler, children of Mary Chandler, deceased, had one fifth.

On June 15, 1888, upon the petition of D. Woelpper Chandler, individually, and as the then trustee for Dorothy Poppal and others showing, inter alia, that David Woelpper, the son of testator, died January 11, 1886, without issue, leaving a will whereof his widow Abbie M. Woelpper was sole devisee, legatee and executrix, and that Margaret Woelpper died March 7, 1887, restored to reason, unmarried and without issue, a rule was issued calling upon the parties in interest to come in and accept or refuse the premises, Nos. 733, 735, Wood street, at the valuation, or show cause, etc., which rule was followed by an order of sale of the premises, and a sale thereof by the master.

The contention herein arose upon the distribution of the proceeds of said sale, the question being as to the disposition to be made of the one fifth part or share held in trust for Margaret Woelpper during her life, and whether the estate of David Woelpper, the son, who died in the lifetime of Margaret, had any interest in that share. The master, reviewing many adjudicated cases, English and American, ruled, under the authority of Johnson v. Morton, 10 Pa. 251, and Ross v. Drake, 37 Pa. 375, that the word, "surviving," in the paragraph of the will hereinbefore quoted, referred to the death of the testator, and David Woelpper having survived that period, he had a vested interest in the share held in trust for Margaret for life, and therefore his estate was entitled to a share of the fund for distribution.

Exceptions filed to the master's report by D. Woelpper Chandler, the petitioner, were sustained, ARNOLD, J., filing an opinion December 22, 1888, as follows:

By the will of David Woelpper, Sr., who died on December 18, 1839, a share of his estate was devised, on a contingency which has happened, to a trustee for his daughter Margaret, upon a trust similar to that of his other daughters, which was, to keep the estate at interest and to receive and pay the income to her during her life, "and from and immediately after the decease of my said daughters respectively, and as that event happens, I give and bequeath the estate and property of the daughters dying, which shall then be held by the said trustee under this my will, to be equally divided among the surviving brothers and sisters, and the lawful issue of such as may be

dead (if any), such issue taking only the share thereof which his, her or their parents would have taken if living, if one person solely, and if more than one in equal shares as tenants in common; provided, however, that if my said daughters, or either of them, should die leaving lawful issue, the share of such daughter, so dying, shall go to and be equally divided among such issue, and the lawful issue of such as may be dead (if any), such issue taking only his or her parent's share, if one solely; if more than one, in equal shares as tenants in common," etc.

In proceedings for the partition of the real estate of David Woelpper, Sr., two houses and lots were on July 17, 1880, set apart for the use of Margaret, in severalty. She died on March 7, 1887, unmarried and without issue, and, the houses set apart for her having been sold, the fund realized therefrom is before us for distribution. David Woelpper, Sr., left surviving five children, David, George, Mary, Dorothy and Margaret. David, the son, died on January 11, 1886, leaving a will devising his estate to his wife Abbie M., and appointing her executrix. The claimants of the estate are the children of Mary, who died before Margaret, and the grantees of George and Dorothy, who survived her, and claim that the fund should be distributed to them in equal third parts; while Abbie M. Woelpper, executrix of the will of David Woelpper, Jr., claims that the fund should be divided into four parts, and one part awarded to her. The master has reported that David Woelpper, Jr., left no issue. If he had, the fund in court would have to be divided into four parts, in any event, and one of them awarded either to David's issue or his executrix, as an asset of his estate.

The learned master, in a carefully prepared and instructive report, says: "If this contention were to be decided according to the intention of the testator, it would be easily adjusted. It is not possible that any one reading the will of David Woelpper, Sr., could come to any other conclusion than that he intended the period of survivorship to be the death of the first taker, and not his own death. The master is satisfied that such was his intention." But, deeming that the word, surviving, has a technical meaning, and that the use of it operates to defeat rather than effectuate the intention, for which he cites Johnson v. Morton, 10 Pa. 251, and Ross v. Drake, 37 Pa. 375, he de-

cided "that the words of survivorship refer to the death of the testator and not to the death of Margaret Woelpper, the life tenant, notwithstanding the fact that the conclusion reached thereby renders meaningless the will, so far as this clause is concerned, and necessitates a decision opposed to the common understanding of the meaning of the word, surviving, and to the sense in which it was intended to have been used by the testator."

We think that the master has relied too much upon authority, without considering whether this case comes within the reason of the rule. Technical rules of law are not only wise, but they are indispensable in any orderly system, for the determination of doubtful cases. It is the province of courts to construe wills, not to make or break them. Hence, in doubtful cases, certain rules of law are applied, but where the intention of the testator is clearly to be seen, technical rules are disregarded, and the intention shall prevail unless it is contrary to law: Reck's App., 78 Pa. 432; Baker and Wheeler's App., 115 Pa. 590. Where the meaning of a will is clear, it interprets itself, and neither subsidiary facts nor extrinsic evidence can be introduced to create a doubt: Huber's App., 80 Pa. 348; Sponsler's App., 107 Pa. 95. To the intention of testator, technical language, and even the ordinary meaning of words, must give way: Thompson's App., 100 Pa. 478.

There is a well-grounded rule of law for the construction of wills and deeds, which has been reiterated so often that it may be considered as fundamental. It is this: "In deeds, as in wills, the intent of the grantor is to be taken as the cardinal rule for their construction, and . . . . . it may now be regarded as settled, that even technical words of limitation, found in an executed conveyance, may be so qualified by the context as to make them conform to the intention of the grantor." This phrase, taken from Mergenthaler's App., 15 W. N. 441, was repeated in Criswell v. Grumbling, 107 Pa. 408. Its application in various cases shows the extent to which it has been carried. Thus, in Huss v. Stephens, 51 Pa. 282, the word, heirs, was held to be a word of purchase, so as to give effect to the intention of the grantor. These instances are cases involving the construction of deeds, while in the cases of wills the courts are, if possible, more liberal in enforcing them ac-

cording to the intent. The word, issue, which, prima facie, means, heirs of the body, which are words of limitation, will be construed as a word of purchase, or limitation, as will best effectuate the intention of the testator : Chew's App., 37 Pa. 23 ; Taylor v. Taylor, 63 Pa. 481 ; Middleswarth's Admr. v. Blackmore, 74 Pa. 414 ; and the word, children, will be permitted to be used in the sense of, heirs of the body, if the testator intended so to use it : Guthrie's App., 37 Pa. 9. I refer to these cases as illustrations of the rule above referred to.

There is another rule equally well settled. Where the meaning of a devise is uncertain, the law will adhere as closely as possible to the general rules of inheritance, and whosoever claims against the law of descent must show a satisfactory written title : Grim's App., 89 Pa. 333. An intent to exclude the offspring of children of a testator, who might happen to die during the life of the tenant of a particular estate devised by the testator, is not to be imputed to him, unless it be undoubtedly manifested : Minnig v. Batdorff, 5 Pa. 503 ; hence it was said in Johnson v. Morton, 10 Pa. 245, that " although we believe that words of survivorship must be referred to the death of the testator, whether the gift is immediate, or the limitation is after a prior life or particular interest carved out, yet that general intent may be controlled by particular expressions in the will, indicating a contrary intent." This was followed in Ross v. Drake, 37 Pa. 375.

These last two cases are relied upon by the learned master as establishing an unbending rule that the word, surviving, used by David Woelpper, Sr., in his will, refers to the date of his death and not the death of Margaret, his daughter and life tenant, notwithstanding the testator, as the master truly says, intended the death of the life tenant and not his own death, as the time to which the survivorship should relate. An examination of those cases shows that they were rightly decided on the facts of each of them, and that the wills were construed and enforced in such a manner as to carry out the intention of the testator, and not to exclude any of his issue or offspring. In neither of them was any provision made for the issue of any child of the testator, who should die pending the life estate. Therefore Justice ROGERS, in Johnson v. Morton, said that the old rule which refers the word, surviving, to the

death of the testator, " preserves the rights of children, as here, intermediate between the time of the death of the testator and the time of the period of distribution ;" while in the matter of Gregson's Trust Est., 2 DeG., J. & S. 428, it was ruled that the word, survivors, in that case, referred to the death of the life tenant "without reference to the authorities," . . . . . "according to the true construction" of the will, that is, to carry out the intent of the testator.

In my judgment no inflexible rule should be adopted on the subject, and that words of survivorship should be permitted to relate either to the death of the testator or the tenant for life, or other event, as marriage or coming of age, as the testator intended to use them ; for there was as much wisdom and justice in the decision in Ross v. Drake as there is in Gregson's Trust Estate. But in the case before us, there is no danger of disinheriting the issue of any remainderman, for David Woelpper, Sr., has provided for them by devising the remainder of Margaret's share, from and immediately after her decease, to her surviving brothers and sisters and the lawful issue of such as may be dead. While the words, " from and immediately after her decease," may relate as well to the time of enjoyment : Guthrie's Appeal, supra, as the time of vesting of the remainder : Gregson's Trust Estate, supra, yet they may well be relied upon, in connection with the words, " as that event happens," and the provision for the issue of deceased children, as additional and persuasive evidence that the testator's intention was, that the remainder was to vest at the death of Margaret, and not the death of the testator. Without intending to depart from the rule laid down in Ross v. Drake and its kindred cases, we are of opinion that the intention of the testator should be carried out, and therefore we sustain the exceptions to the master's report, and refer the matter back to him for re-distribution in accordance with this opinion.

The master having made a supplemental report of distribution in accordance with the foregoing opinion, the same was confirmed and a final decree made, when Abbie M. Woelpper, executrix and legatee of David Woelpper, Jr., deceased, took this appeal, specifying that the court erred in sustaining the exceptions to the master's report and in decreeing accordingly.

*Mr. John J. Pinkerton*, for the appellant.

Counsel cited: Johnson v. Morton, 10 Pa. 247; Hancock's App., 112 Pa. 541; Ross v. Drake, 37 Pa. 373; Minnig v. Batdorff, 5 Pa. 503; Buckley v. Reed, 15 Pa. 85; Trotter v. Williams, Prec. in Ch. 78; s. c. 2 Eq. Cas. Abr., 344; Stringer v. Phillips, 1 Eq. Cas. Abr. 291; Wilson v. Bayly, 3 Bro. P. C. 195; Roebuck v. Dean, 2 Ves. Jr. 265; Perry v. Woods, 3 Ves. 204; Doe d. Long v. Prigg, 8 B. & C. 231; Rose d. Vere v. Hill, 3 Burr. 1881.

*Mr. John G. Johnson* (with him *Mr. Emil Rosenberger*), for the appellees.

Counsel cited: 2 Jarman on Wills, § 736; Theobald on Wills, 508–9; Ross v. Drake, 37 Pa. 373; Johnson v. Morton, 10 Pa. 245.

OPINION, MR. JUSTICE MITCHELL:

It is perfectly clear that the will of David Woelpper, Sr., creates contingent remainders in the shares left to his daughters, determinable on the death of each respectively, without issue. The language of the will is, "And from and immediately after the decease of my said daughters respectively, and as that event happens, I give and bequeath the estate and property of the daughters dying, which shall then be held by the said trustee under this my will, to be equally divided among the surviving brothers and sisters, and the lawful issue of such as may be dead (if any); . . . . . provided, however, that if my said daughters, or either of them, should die leaving lawful issue, the share of such daughter, so dying, shall go to and be equally divided among such issue and the lawful issue of such as may be dead."

The primary and controlling gift here is to the daughters for life, and upon their deaths, to their issue if they should leave any. "Die leaving issue" naturally and necessarily means issue surviving at the time of the daughter's death, and the previous devise in the same clause to the "surviving brothers and sisters" must refer to the same time, for then only can the contingency on which alone they are to take, to wit, the death of the daughters without leaving issue, be determined. This would be beyond question if the clause were written in

its natural order, giving the share to the daughters for life, and on their deaths to their issue, but in case they should die without leaving issue, then over to the surviving brothers and sisters. But the order being inverted, and the devise over to the surviving brothers and sisters being interpolated between the devise to the daughters and that to their issue, gives rise to the argument that the remainders to the brothers and sisters are vested in those surviving at the death of the testator, subject to be divested by the birth of issue to the daughters. But if the remainders are vested in the brothers and sisters at the death of the testator, and divested by the birth of issue, then they must re-vest in the brothers and sisters on the death of the issue in the mother's lifetime, and be again divested by the birth of other issue, and so be tossed to and fro like shuttle-cocks, as successive children may be born and die. But even if this inconvenient shifting could be maintained, is the technical argument technically sound? The remainder is not to issue born to the daughters, but issue left surviving at their death. This remainder is incontestably contingent. But if the remainder was vested in the brothers and sisters first, and is then divested by the contingent remainder in the issue after their birth, where is the remainder to vest during the joint lives of the daughters and their issue? Not in the issue certainly, for their estate is contingent on surviving their mother. Nor can it be in the brothers and sisters, for the living issue stands between them and the devise over, and their estate is contingent on the now existing and future born issue dying before their mother. In fact, the remainders are not vested at all, but contingent, as to both the issue and the brothers and sisters; and where the rest of the fee is, whether in nubibus, or in gremio legis, as the early lawyers called it, or in reversion in the heirs of the testator, as Fearne maintains (2 Sharswood's Blackstone, 107 n.), is not a practical question which we need discuss here.

Without going into such subtleties it is entirely clear that the principal objects of the testator's bounty as to these shares, were his daughters and their issue, and the time he had in mind when the shares should possibly go to any one else, was the death of the daughters and it was with reference to that time that he designated the surviving brothers and sisters as the ultimate devisees.

This being clearly the actual intent of the testator, what is in the way of holding it to be also the legal intent of his language? It is said that there is a settled rule of interpretation that where land is devised for life with a remainder over, whether to persons nominatim, or to a class, it will vest in the objects to whom the description applies at the death of the testator, and the word "surviving," when used in the description refers to the period of the testator's death.

Is there any such rule settled in the sense that it must be unbendingly applied to all cases? Has any phrase or description of persons acquired a set and absolute meaning, that must be conclusively presumed and adhered to, without regard to the context, or the circumstances, or the actual intent of the testator? If so, it is a clear perversion of fundamental principles, and the grounds for maintaining it should be strong indeed.

In the construction of wills the great general and controlling rule is that the intent of the testator shall prevail. And by his intent is meant his actual intent. It is often said, as in the language of Weidman's App., 42 Leg. Int. 338, quoted by our brother GREEN in Hancock's App., 112 Pa. 532, and cited by appellant, "The question in expounding a will is not what the testator meant, but what is the meaning of his words." But by this it was never intended to say that the testator's meaning when apparent can be disregarded, but, that it cannot be got at aliunde, by what he might have meant, or even what under the circumstances perhaps he would have meant, but only by what he said. The search is confined to his language, but its object is still his meaning.

With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all of these canons are subservient to the great rule as to intent, and are made to aid, not to override it. As in all such cases, care is required that tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it.

The canon relied on by the appellant is, as already said, that

where there is a devise for life with remainder over to survivors, the word survivors shall be taken to refer to the period of the testator's death. Three cases are specially cited to maintain the applicability of this rule to the present will : Johnson v. Morton, 10 Pa. 251 ; Ross v. Drake, 37 Pa. 375 ; and Barker's App., 2 Cent. R. 282.

Johnson v. Morton is an excellent illustration of the rule, and of the principles on which it should be applied. After discussing the English cases, and the then comparatively recent stand made by Sir JOHN LEACH in Cripps v. Wolcott, 4 Madd. 11, for an intelligent application of the rule on principle, and not blindly and indiscriminately on authority to all cases, ROGERS, J., concludes to follow the older precedents, yet he does it expressly on the ground that there was no clear intent of the testator to the contrary. "Although we believe the general rule to be, that the words of survivorship must be referred to the death of the testator, whether the gift is immediate, or the limitation is after a prior life or particular interest carved out ; yet that general intent may be controlled by particular expressions in the will, indicating a contrary intent. I had some doubt whether that was not the case here ; but on consideration have come to the conclusion that it differs in no respect from Rose v. Hill, 3 Burr. 1881, where, in a case nearly similar, the survivorship was referred to the death of the testator."

Ross v. Drake, though a stronger case in favor of the application of the rule, is not essentially different in principle. The testator gave a sum of money to the use of his son John for life, with remainder to John's surviving children, but with a proviso, that if John should so elect, the money was to be expended for a tract of land for his use for life, with remainder as before. The court held that the rule laid down in Minnig v. Batdorff, 5 Pa. 503, applied, and the case must be treated as a devise of realty, and that the remainder vested in John's children at the death of the testator. But that this was not intended to be the peremptory application of the rule, irrespective of the intent of the testator, is clear from the language of STRONG, J., who says : "Such a remainder vests in the objects to whom the description applies at the death of the testator, subject to open and let in others after born. A testator may indeed direct otherwise, and

it is supposed he did so in this case by limiting the remainder to the surviving children of John," etc. He then proceeds to discuss the period to which the word surviving relates, and concludes that under the cases in England and this state, citing specially Johnson v. Morton, the period is the death of the testator.

Barker's Appeal is a very recent case, decided January 4, 1886, and meagerly reported. It does not call for any extended notice. The opinion of the court below, affirmed per curiam, is that, "it is evident there is nothing in this clause of the will showing a manifest intent that the word surviving should be otherwise applied, and therefore it refers to the death of the testator."

There are numerous other cases more or less closely in point, but these have been selected especially by the plaintiff in error, and are as strong as any of their class. It may well be doubted whether one or more of them has not, in the desire already spoken of to reduce the uncertainties of the subject to a minimum, pushed the application of the set general rule up to or beyond the true bound ; but the strongest and most emphatic of them has stopped short of deciding that the rule, declaring the presumed intent of the word, surviving, to apply to the time of the testator's death, shall override the plain actual intent of the testator to refer it to another period. Even strict technical terms, words of art which are edged tools dangerous in unskilled hands, will be taken out of their technical meaning by a clear intent of the testator to use them in a different sense ; and it is not tenable for a moment that any more unyielding force should attach to words or phrases like "surviving brothers," etc., which are not technical words at all, and have a set presumptive meaning as to time, only because experience has appeared to indicate that they are most commonly used with reference to that period. Giving them a quasi technical meaning for the purpose of aiding in the ascertainment of intention, is far short of making them a Procrustean bed on which every unfortunate testator's will shall be stretched out of its proper shape or shorn of its members, to make it conform to the arbitrary standard.

It is not therefore necessary to consider how far reported decisions would be binding precedents, without reference to

actual intent, in cases exactly parallel. No case has been cited in which the language is exactly like the present, or even closely similar, if we take it with its context just as it is written; and, taking the cases therefore as precedents, not for the meaning of the exact language of Woelpper's will, but for the principles of construction by which his meaning is to be ascertained, we concede them all their legitimate authority in conceding that they establish the general rule that the phrase "surviving brothers and sisters" means surviving at the death of the testator, and that it shall be so construed unless it clearly appears that the testator meant it to refer to a different period. As already shown, the testator in the present case plainly meant to refer to the time of his daughter's death, and his actual intent being thus entirely clear, there is no room for any presumption, and the cases establishing that presumption have no application. " All mere technical rules of construction," says Sharswood, J., in Reck's App., 78 Pa. 435, "must give way to the plainly expressed intention of a testator, if that intention is lawful. It is a rule of common sense as well as law, not to attempt to construe that which needs no construction."

The learned judge below followed the true intention of the will, and the decree must be affirmed.

Decree affirmed.