## Warrington v. Brooklyn Trust Company, Trustee.

*Wills—Mistake—Correction of misdescription of subject of devise—Bill to remove cloud on title.*

1. Courts cannot decree reformation or correction of a will, even for the purpose of making it conform to the intention of the testator, unless such an intent can be inferred from the instrument as executed, or unless the language of the will is ambiguous.

2. Where a will has been admitted to probate, equity will not attempt to reform it by correcting a mistake therein, as the probate is a judgment of a court of competent jurisdiction that the instrument as written is the last will and testament of the testator; under well-settled principles, such a judgment cannot be attacked collaterally.

3. To give a court of equity jurisdiction to take cognizance of and construe or interpret a will, there must be an actual litigation in respect to a matter which is the proper subject of the jurisdiction of a court of equity as distinguished from a court of law.

4. The jurisdiction of a court of equity to entertain a bill of peace to remove a cloud from the title to real estate should only be exercised where the interest to be protected is equitable, or where, if the estate be legal, there is no adequate remedy at law.

5. A bill in the nature of a bill to remove a cloud from the title of real estate, under the above principles, cannot be entertained to correct a devise of clearly described property by striking out the description and inserting the description of another property, although the testatrix did not own the property described in the will, did own the property whose description is sought to be inserted, and the misdescription was due to the mistake of the scrivener; especially is this true if the will has been admitted to probate in another court.

Bill to remove cloud from title. C. P. No. 1, Phila. Co., Dec. T., 1920, No. 5688.

*Evans, Forster & Wernick* for plaintiff; *H. A. Hoefler,* for defendant.

PATTERSON, J., Oct. 31, 1921.—On Sept. 14, 1919, the will of Mary E. Brown, deceased, of the Borough of Brooklyn, City of New York, was duly admitted to probate and an exemplified copy filed in the office of the Register of Wills of Philadelphia County.

Section 4 of said will provides: "IV. I give, devise and bequeath unto my friend, Mary T. Warrington, now of 3518 Springgarden Street, Philadelphia, Pennsylvania, my real estate and property known as Nos. 1208, 1210 and 1212 South Carlisle Street, Philadelphia, Pennsylvania, and also the sum of Twenty-five hundred dollars."

The bill filed by the complainant, in addition to averring the above facts, alleges that Mary E. Brown, the decedent, never owned premises No. 1208 South Carlisle Street, but was the owner, at the time of her death, of Nos. 1204, 1210 and 1212 South Carlisle Street, and no other real estate on South Carlisle Street.

In sections 8, 12 and 13 of the bill it is averred:

"8. That your orator believes, and therefore avers, that it was the intention of the said testatrix, Mary E. Brown, to devise to your orator said premises, 1204 South Carlisle Street, and that the number 1208 was inserted in said will instead of the number 1204 through a mistake of the scrivener.

"12. That since paragraph four of the said will does not mention 1204 South Carlisle Street, the same being omitted therefrom, so your orator believes, by mistake, there is a cloud on her title.

"13. That your orator is without adequate remedy at law."

The prayer for relief is as follows: "*(a)* That, pending this bill, the said defendant be especially until hearing and on final hearing perpetually

restrained from selling or mortgaging or otherwise disposing of said premises. *(b)* That title to said premises, No. 1204 South Carlisle Street, Philadelphia, described as aforesaid, be decreed to be in your orator. *(c)* General relief."

It will thus be seen that this is practically a bill to reform or correct an instrument admitted to probate as a will.

When the cause came on for hearing, counsel for complainant offered the testimony of Richard T. Greene, a member of the New York bar, who is the executor of the decedent's will, and who also prepared the will. He testified to the effect that the decedent called upon him for the purpose of having her will drawn; that she informed him that she wished to devise her three Carlisle Street properties to her friend, Mary T. Warrington, the plaintiff in this case; that he, under her direction, did in fact dictate the terms of Mrs. Brown's will to the stenographer; that inadvertently, through an error on his part in dictation, or through an error on the part of the stenographer in transcribing the dictation, the number "1208" was written in the will in the place of the number "1204;" that the will was subsequently executed by the decedent in his office; that he was familiar with the properties owned by Mrs. Brown, and that she did not, at the time of making her will, or at any other time, own the property number "1208" South Carlisle Street.

The defendant's counsel objected to the admission of such testimony.

The law of Pennsylvania in regard to the reformation of wills has been stated thus:

"In the construction of wills, the great general and controlling rule is that the intent of the testator shall prevail. And by his intent is meant his actual intent. It is often said, as in the language of Weidman's Appeal, 42 Legal Intell. 338, quoted by our brother Green in Hancock's Appeal, 112 Pa. 532, and cited by appellant, 'The question in expounding a will is not what the testator meant, but what is the meaning of his words.' But by this it was never intended to say that the testator's meaning, when apparent, can be disregarded, but that it cannot be got at *aliunde* by what he might have meant, or even what, under the circumstances, perhaps he would have meant, but only by what he said. The search is confined to his language, but its object is still his meaning:" Woelpper's Appeal, 126 Pa. 562 (1889). See, also, Best v. Hammond, 55 Pa. 409; Appel v. Byers, 98 Pa. 479; Willard's Estate, 68 Pa. 327; Hancock's Appeal, 112 Pa. 532; Myers v. Myers, 16 Pa. Superior Ct. 511; Hunter v. Hunter, 37 Pa. Superior Ct. 311 (1908).

In numerous reported cases it has been held that courts cannot decree the reformation or correction of a will even for the purpose of making it conform to the intention of the testator, unless such an intent can be inferred from the instrument as executed, or unless the language used in the will be ambiguous. Amongst the reasons given are the following: (1) Because the testator has passed beyond the jurisdiction of all earthly courts; (2) because a will is a voluntary conveyance, and even if the court had jurisdiction of the testator, it could not compel him to make a will of any sort; (3) because the statute of wills provides for the devolution of property by wills actually made, and not by those parties intended, however definitely, to make, but did not make.

After a will has been admitted to probate, there is still another reason why a court of equity should not attempt to reform it by correcting a mistake therein, and that is because the probate is a judgment of a court of competent jurisdiction that the instrument, just as it is written, is the last will and testament of the testator. On well-settled principles, such a judgment should not be attacked collaterally.

1 D. & C.

While the judgment of the New York court admitting Mary E. Brown's will to probate remains in force, this court, in the absence of fraud, should not attempt to adjudge the instrument, or any of its provisions, to be other than the will of the testatrix. Neither should we be permitted to add provisions not written in the will, or change or strike out any provisions which may be already there. If we have any jurisdiction at all, it should be merely for the purpose of construing the terms of the will as made by the testatrix, in so far as it affects property in this jurisdiction.

While the bill prays for general relief, it is clear from its allegations that the present proceeding was brought solely for the purpose of having the fourth clause of the will reformed by the court, and thus determine the question of title to certain real estate.

The first question, therefore, to be determined is whether or not this court has jurisdiction in the case as made by the complainant.

The reported decisions are not in accord as to the reason why a court of equity will exercise jurisdiction to interpret and enforce the provisions of a will. Some hold that such jurisdiction is merely an incident to its general jurisdiction over trusts; that it will not exercise its powers to construe a will which deals only with, and disposes of, purely legal estates or interests in land, and makes no attempt to create any trust relation in respect to the property devised. Others hold that its jurisdiction arises from the complicated character of the provisions of the will, from the difficulty of understanding its meaning, and from the doubt and uncertainty as to the rights of the parties claiming under them. See 3 Pom. Eq. Jur., 1155 to 1157, and cases cited; 2 Am. & Eng. Dec. in Eq., 687, 690, and cases there cited. The prevailing doctrine in this country seems to be that, in order to give a court of equity jurisdiction to take cognizance of, and to construe or interpret, a will, there must be an actual litigation in respect to a matter which is the proper subject of jurisdiction of a court of equity as distinguished from a court of law. Such is our view.

Pomeroy, in discussing this question, says (§ 1156) that "the doctrine which seems to be both in harmony with principle and sustained by the weight of authority is that the special jurisdiction to construe wills is simply an incident of the general jurisdiction over trusts; that a court of equity will never entertain a suit brought *solely* for the purpose of interpreting the provisions of a will without any further relief."

The Pennsylvania cases cited by complainant in support of his assertion that, "in regard to mistakes in a will, there is no doubt but that the courts of equity had jurisdiction to correct them," are all Orphans' Court cases dealing with wills probated in Pennsylvania.

True, it is alleged in the bill that there is "a cloud on the complainant's title," but the facts relied upon to support this contention fail to show any such condition.

"A cloud on the title" is some outstanding claim, or encumbrance, which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently and on its face has that effect, but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question.

In the opinion of this court there is no cloud on the title to property No. 1204 South Carlisle Street.

All that the complainant alleges in her bill is that she believes that it was the intention of the testatrix to devise said premises to complainant and that, notwithstanding this, the defendants claim title to said premises, therefore, there is a cloud on her title.

She further avers that she is without adequate remedy at law. Surely this cannot be so. The sole question involved is one of ownership. The complainant is, or is not, the owner of No. 1204 South Carlisle Street through and by the will of Mary E. Brown. A bill of peace to remove a cloud from a title is not the proper remedy here, for there is no cloud. The jurisdiction to remove clouds from titles is exercised on the principle of *quia timet, i. e.*, where the instrument constituting the cloud may be used to injuriously or vexatiously embarrass or affect a plaintiff's title. There is no instrument constituting any cloud in the matter now before us. The trend of the cases would seem to indicate that jurisdiction should only be exercised (1) where the interest to be protected is equitable; or (2), if the estate be legal, then only when there is no adequate remedy at law. In the case before us the plaintiff does not claim an equitable title to the land. It is a legal title which she claims. To vindicate her claim she has a full and adequate remedy on the law side of the court.

While it is true that the defendants have not raised the question of jurisdiction in this proceeding, yet it is well settled that every court has the judicial power to determine such a question, and may do so of its own motion, even though the question has not been raised by the pleadings.

The bill is, therefore, dismissed, at the costs of the complainant.