# Reilly's Estate.

*Will—Construction—Intention of testator.*

The question in expounding a will is not what the testator meant, but, what is the meaning of his words. By this it was never intended to say that the testator's meaning, when apparent, can be disregarded, but, that it cannot be got at aliunde, by what he may have meant, or even what, under the circumstances, perhaps, he would have meant, but only by what he said.

*Will—Vested and contingent remainder—Devise.*

Where real or personal estate is devised or bequeathed to such children, or child, or individuals, as shall attain a given age; or the children who shall sustain a certain character, or do a particular act, or be living at a certain time, without any distinctive gift to the whole class, preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person. For until the age is attained, the character is sustained, or the act is performed, the person is unascertained; there is no person answering the description of the person who is to take as devisee or legatee.

Testator in one clause of his will directed as follows: " I give and bequeath to the children of my late brother, John, now deceased, the annual interest of forty thousand dollars, to be divided between them, share and share alike, during their lives, and upon the death of each one, I give one full share to his or her children, share and share alike, and the issue of any deceased to take the share of the parent." By a subsequent clause he directed: " If one or more of the children of my brother John should die without lawful issue, the bequest of forty thousand dollars shall be equally divided among the surviving children of my said brother, John." *Held*, (1) that the children of John as a class were the object of testator's bounty under the prior clause and only such as were in being at the time of the testator's death could take; (2) that these children, as a class, took the income, with remainder over of the principal sum to the issue of those comprising the class; (3) that the estate in remainder, so provided was, by the language of the subsequent clause made subject to being defeated by any member of a class dying without issue; (4) that upon the death of one of the children of John without issue, the whole bequest of $40,000 should be equally divided among the surviving children of John.

*Will—Power to executors to construe will—Attempt to exclude jurisdiction of courts.*

The jurisdiction of the courts to pass upon the construction of a will is not ousted by a direction in a will that the executors are to define its provisions, and that their decision shall be final and conclusive upon all matters in it.

Argued March 8, 1899.   Reargued March 5, 1900.   Re-argued a second time May 20, 1901.   Appeal, No. 70, Jan. T., 1899, by T. Wallace Reilly, Mary A. Reilly, Margaret R. Brown, Edward D. Reilly and Elizabeth Reilly, from decree of O. C. Northampton Co., sustaining exceptions to auditor's report in the estate of Dennis Reilly, deceased.   Argued before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reargued before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL and MES-TREZAT, JJ.   Reargued a second time before McCOLLUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ.   Reversed.

Petition of T. Wallace Reilly et al. for an order on executor of Dennis Reilly, deceased, to pay legacies.   The petition was referred to Fred Green, Esq., who filed the following report:

The undersigned auditor, appointed by this honorable court in the matter of the said petition for citation and answer thereto, to determine the matters and things therein made issuable and make report thereof to the court, respectfully reports:

H. J. Steele, H. M. North and Edward D. Reilly, Esqs., appeared for the petitioners, and R. C. Stewart, Esq., appeared for Richard M. Reilly, executor.

This controversy arises upon the construction of two clauses in the will of decedent.   The essential facts are averred in the petition and admitted in the answer.   They are as follows:

Dennis Reilly died, testate, in the city of Easton, Pa., July 2, 1889, and his will was duly probated and recorded in will book No. 11, page 324.

That Richard M. Reilly and Bernard J. McGrann were appointed the executors of his will by decedent, and that they duly qualified.   That upon his own petition, after having filed his account, Bernard J. McGrann was discharged by this court from the duties of his trust, leaving Richard M. Reilly sole executor.

The twelfth clause of the will is as follows:

" I give and bequeath to the children of my late brother, John, now deceased, the annual interest of forty thousand dollars, to be divided between them, share and share alike, during their lives, and upon the death of each one, I give one full

share to his or her child or children, share and share alike, the issue of any deceased to take the share of the parent."

The twenty-first clause is :

" My executors are to define the provisions of this, my will, and their decision shall be final and conclusive upon all matters in it.   They will construe 'child or children' to be lawful issue, and in the sixth, eighth, ninth, eleventh and twelfth clauses they will construe each in this manner.   If one or more of the children of my brother, John, should die without lawful issue the bequest of forty thousand dollars ($40,000) shall be equally divided among the surviving children of my said brother, John."

That the children of John Reilly, deceased, who survived the testator were T. Wallace Reilly, Mary A. Reilly, Margaret R. Brown, Edward D. Reilly, Elizabeth Reilly, William H. Reilly, John B. Reilly and Richard M. Reilly, the executor. They are all of age and are now living, except William H. Reilly, who died unmarried and without issue, on November 25, 1896.

The interest of John B. Reilly in the estate of decedent has been transferred to Edward D. Reilly, by assignment, under his hand and seal, dated February 3, 1897.

It is the claim of the petitioners that the twenty-first clause of the will of the testator provided for a certain contingency upon the happening of which, to wit: the death of one or more of the children of his brother, John, without lawful issue, the trust created for their benefit by the twelfth clause should cease and determine, and the principal thereof, $40,000, be presently payable to the survivors.

The executor denies that, because of the death of William H. Reilly without lawful issue, the fund is now distributable to the surviving children of John Reilly.   He claims that testator in the twelfth clause of his will created an express trust for said children to continue during their lives, and that the trust is not revoked by the twenty-first clause; and further, that by said clause he is empowered to define the provisions of the will and that his decision is final and conclusive.   He asserted his right under this authority to decide the question raised in this proceeding and he holds that the trust is not destroyed.

By the terms of the twelfth clause a trust is created for the

children of John Reilly. They are to divide the income of $40,000 equally during life, and upon the death of each "one full share" is given to his or her child or children. It is true no direct duties are imposed upon a trustee, nor in fact is a trustee named in the will, but these elements of a valid trust are not absolutely indispensable, where otherwise the general intent of the testator is clear. In Bently v. Kauffman, 86 Pa. 99, the Supreme Court says: "That a bequest of income or profits will carry an absolute estate in some cases is well settled; but the ground of the conclusion in such instances is that no contrary intent of the testator appears to sever the product from its source, and the fruits therefore carry with them that which bears them. Hence when the intent clearly appears to carry the corpus or principal over to others, the words of the will must be permitted to have their proper force."

In Sheets's Estate, 52 Pa. 257, STRONG, J., says : "One may be made a trustee without calling him such, as readily as a trust can be created without nominating any one to perform it. To determine whether there is a trust we are to look, not at the title given, but at the powers and duties conferred. There is no magic in the word 'trustee.' No particular form of words is necessary to make a trust."

And in Ritter's Estate, 148 Pa. 577, the court below (affirmed by the Supreme Court in a per curiam opinion), held: "The principle is well established that when a person by his will, either in express terms or by legal implication, has given the income of his personal estate to one for life, and on his or her decease to another, or left it on the termination of the life interest, undisposed of, so that it will go to his heirs at law, or to his residuary legatee, and has not in terms placed it in trust with any trustee other than the executor, it is the province and duty of the executor to hold it, and to pay over the income from time to time to the legatee for life."

It follows, therefore, that since by the twelfth clause it clearly appears that testator intended to sever the product from its source, disposing of the income annually, and after the death of the first taker, providing for the ultimate distribution of the principal a trust was sufficiently created to warrant the executor in retaining the fund for the purposes named.

Upon the death of each one of the children of John "One full

share " is given to his or her child or children.  By "one full share " testator undoubtedly means share of the principal, for if we hold it to mean only a share of the income, there would be no disposition of the principal fund at all, and as to it he would die intestate.  He cannot be presumed to have so intended. The expression, " one full share," as used in this clause, can be construed grammatically to refer to either the interest of $40,000 or to the fund itself.

In the sixth clause testator gives his niece, Mary Regina, $600 per annum during life, and at her death, $10,000 to her child or children.  He also gives her $5,000 absolutely.

In the eighth clause he gives to his brother, Patrick, and his wife, the annual interest of $15,000, and at their decease the principal to their children.

In the ninth clause he gives to his nephews, Bernard Dennis Reilly and Andrew James Reilly, the annual interest of $10,000, and at the decease of each one, one half of said principal to his children.

In the tenth clause he gives to his nephew, John Richard Reilly, the annual interest of $5,000, and at his death the principal to his children.

In the eleventh clause he gives to the children of his brother, Richard, the annual interest of $15,000, and upon the decease of each one he gives "one full share " to his or her child or children.  The eleventh and twelfth clauses are the only ones in which he uses this expression.

It is thus seen that it would be entirely consistent with the scheme of the will to hold that the testator intended to treat all his nephews and nieces alike as respects the principal of the various funds set apart in his will.  In most instances the amount set apart, being in sums a multiple of $5,000, seems to indicate that he had in mind a legacy to each nephew and niece of $5,000.  What he evidently had in view at the time he drafted his original will was equality in his gifts.  So long, therefore, as the expression, "one full share," can be grammatically construed to apply to either the principal or annual interest, and by holding it to refer to the principal, this idea of equality can only be carried out and the fund itself finally distributed, and thus avoiding intestacy, it is manifest it should be so held.  To hold that testator meant income would merely result in the

creation of a gift of the income in perpetuity, and would, by operation of law, vest the principal in the children.

By the twelfth clause, then, the interest of $40,000 is divided annually among the children of John, and upon the decease of each one of them, one full share to be given to his or her child or children.

After this portion of his will had been written, testator noticed that he had made no provision for the death of one of the children of John without children. To provide for this contingency he added to the twenty-first clause the following: "If one or more of the children of my brother, John, should die without lawful issue, the bequest of forty thousand dollars shall be equally divided among the surviving children of my said brother, John."

The subject of this bequest is the $40,000 set apart in the twelfth clause in trust for these same children, the income to them and the principal to their children. As we have seen, the trust is a valid one, and without modification, subsequently, by the testator, would continue until, in process of time, the principal became absolutely vested in the grandchildren of John Reilly. The plain and ordinary meaning of the language of this clause, however, is to put a period to the trust, to provide a contingency upon the happening of which the trust determines, and the principal is at once payable to those who, under the twelfth clause, were only to receive the income. The contingency provided for has actually happened. William H. Reilly, one of the children of John, survived the testator and died without lawful issue. The force and effect of the twenty-first clause becomes of vital importance to the trust.

Are these clauses so inconsistent that they cannot be reconciled? Was it clearly testator's intention to strike down the trust upon the happening of this event?

The bequest in the twelfth clause is not to individuals by name, but to a class. Being to a class, only those who survived testator would take, unless there was a distinct provision to the contrary. The children of one dying before testator, could not take under this clause: Gross's Est., 10 Pa. 360; Jarman on Wills, 623.

The bequest being to a class, there was no occasion to provide for the case of the death of one of that class, prior to

testator's death without lawful issue. So that it is manifest that when testator, in the twenty-first clause, provides for the death of any one of the children without lawful issue, he means dying after his own decease. That is the period of time he had in view. "Dying without lawful issue" means in cases of personalty, not an indefinite failure of issue, but without issue at the time of his, the legatee's, death. "In gifts of personalty the phrase 'die without issue' means die without issue living at the death of the person, the failure of whose issue is spoken of:" Eachus's Appeal, 91 Pa. 105. The period of time being determined, and the failure of issue being a definite one, the contingency arises under which the twenty-first clause becomes operative.

The language of that clause is plain enough. Why should it not be given its ordinary meaning? What was it testator had in mind when he wrote it? It was surely the distribution of the fund of $40,000 should one of the children of John die without lawful issue. So the clause reads.

It was not the share of the dead legatee, that is, "one full share," as it appears in the twelfth clause, which he was trying to distribute, because if that were his intention he would have said so in so many words. Why he should strike down this trust upon the happening of this contingency, it is of course impossible to say, but it is worthy of note that he does so only in the case of the bequest to the children of John. In all the other trusts, except that established in the tenth clause, there is the same omission to provide for the death of a legatee without issue, but in not one of them does he seek to supply that omission. In the tenth clause he provides that the fund, upon a certain contingency, shall fall into the residue of his estate. The testator must have had some special reason for singling out the children of John for this extraordinary favor which he denied to the other beneficiaries. Unless then some established rule of construction can be found which will pervert the plain and ordinary meaning of testator's words, and render them of practically no effect, the conclusion is inevitable that he appreciated their full force and effect, and intended to do exactly what his words undoubtedly accomplished. That he could, if he desired, terminate this trust upon such a contingency, is certain; that the language used is sufficient for that purpose is equally

certain.  The clause is not ambiguous or equivocal.  It can be
interpreted without changing or supplying a single word.  The
fact that it conflicts with a previous clause establishing a valid
trust is of no moment; that is the very object of its insertion
in the will.  That fact simply necessitates a careful scrutiny of
the conflicting clauses, and  the will as a whole, and  if the in-
consistency is clear and irreconcilable, and the  language  of the
later clause free  from  doubt  and  unambiguous, then  it must
be permitted to have its full effect.

In Woelpper's Appeal, 126 Pa. 562, Justice MITCHELL says:
" The  question in  expounding a will is not what the  testator
meant, but what is the  meaning of  his words.  By this it was
never intended  to  say that the  testator's meaning when  ap-
parent can be disregarded, but, that it cannot be got at aliunde,
by what he might have meant, or even what under the circum-
stances  perhaps  he  would  have  meant,  but  only  by  what he
said."

" But, when the meaning  is clear from  language  that is un-
mistakable the instrument interprets itself:" Huber's Appeal,
80 Pa. 348.

In  Reck's Appeal, 78  Pa. 432,  Justice SHARSWOOD  says:
" All mere technical rules of construction must give way to the
plainly expressed intention of  a testator, if  that intention is
lawful.   It is a rule of  common sense as well as law not to at-
tempt to construe that which needs no construction."

In Sheets's Appeal, 82  Pa. 213, Justice WOODWARD says :
" While there is no doubt that of  two contradictory clauses in
a will the first must  give way, and  the last must take effect,
yet the two clauses must refer to the same subject-matter, and
the last must be clearly inconsistent with the first.   If the
main provision plainly covers  the whole subject and is defined
in  terms  that exclude all doubt, and  the  subsidiary provision
may, by conjecture, be made either general or partial, and may
be capable by construction, either by subverting  entirely or of
modifying only the  original gift, such a  subsidiary  provision
must, in  the ordinary case, be confined  to  its partial and re-
stricted operation."

It is said in 1 Redfield on Wills, 438, that "plain and dis-
tinct words are only to be controlled by words equally plain
and distinct.   Such words, to have a controlling effect, must at

least possess a definite and certain meaning. The clearly expressed purpose of a testator is not to be overborne by modifying directions that are ambiguous and equivocal, and may justify either of two opposite interpretations."

The meaning of the words in the twenty-first clause is plain enough. It cannot, by construction, only modify the original clause ; it subverts it entirely, or it is of no effect. It plainly expresses the intention of the testator in language that is neither ambiguous nor equivocal. The auditor is of opinion that the language needs no construction, but that the clause interprets itself and that by reason of the death of William H. Reilly, without lawful issue, the contingency has arisen, as contemplated by testator, and the principal sum of $40,000 is now distributable to the surviving children of John Reilly.

Another question is raised by the executor in his answer. He claims the right to decide the case of petitioners under the authority given him in the twenty-first clause. It reads as follows : " My executors are to define the provisions of this, my will, and ' their decisions ' shall be final and conclusive upon all matters."

The executor, insisting upon his right as here conferred, decides against the petitioners and holds that the trust is not destroyed, but that the fund must be held by him to carry out testator's intentions as expressed in the twelfth clause.

If the clause confers the legal right upon the executor to decide finally all matters in dispute that may occur under his will, then the jurisdiction of the courts is ousted in this matter. The courts can determine no questions arising under this will except such as the executor refuses to decide, or may request them to determine. He is willing now to have the court decide what is to be done with the share of the deceased William H. Reilly.

Testator having provided for the settlement of all questions arising under his will outside of the courts, very naturally added the following : " Twenty-third. Should any one mentioned herein employ counsel to contest my will, or do any act to give my executors annoyance or trouble, he, she or they shall be forever debarred from receiving anything from my estate, and any one or more who shall disobey my wishes in this regard shall forfeit the bequest made to him or them, and they are hereby declared null and void."

This clause in connection with the twenty-first clause, confers most extensive powers and responsibilities upon his executors. If the executors are to define the provisions of the will, they can also say that a legatee has employed counsel to contest the will, or may decide that a legatee has done some act to give them annoyance and trouble, and thus work a forfeiture of that legatee's bequest. Not only has testator imposed unusual powers and duties upon his executors, but he has left them a will replete with difficult questions, puzzling to a lawyer, and which a layman could not be expected to solve.

The powers conferred by the twenty-first clause are in derogation of the constitutional rights of the legatees, and should be strictly construed. They are given to two executors. When testator inserted this provision in his will he had in mind the appointment of two executors, and he subsequently did appoint two, one of them not a relative and not a legatee, Bernard J. McGrann. Mr. McGrann has, with the consent of this court, resigned his trust. The sole executor is Richard M. Reilly, one of the children of John Reilly, and personally interested in this fund. It is true he has decided the matter, so far as he has decided it, against his own interest, but how he has decided the question is immaterial in a discussion of his right to make any decision. It is a fact that the situation, as contemplated by the testator, has changed by the resignation of Mr. McGrann, and that the power conferred upon two executors jointly, one of them disinterested, is now to be exercised by one only.

Such a power as this is not inherent in executors, virtute officii, it must be conferred upon them nominatim. Being conferred upon joint executors, they alone can exercise it. They must all act, as it is vested in them all. It could not be exercised by a sole surviving executor, nor would it devolve upon an administrator c. t. a. It may be compared to a power relating to real estate. Such a power given to two or more executors might be defeated by the death of one of them, or by a refusal to accept. To remedy this, the act of February 24, 1834, was passed, preserving the power to a surviving executor.

It is true the necessity of this legislation is questioned in Ross v. Barclay, 18 Pa. 179. But the ground for the doubt is there stated to be that in cases of real estate trusts survive on the principles of joint tenancy. This is true as to real estate, but

would not be sufficient reason in the case of a power of the kind under discussion. It would seem then that there is no survivorship as to such powers in the absence of legislation to that effect. That the withdrawal of one of those upon whom the power was conferred has put it beyond the control of the remaining one to exercise that power.

Questions of both law and fact may arise under a will. If the question raised is one purely of law, as in the present petition, involving the legal effect of technical terms, or conflicting clauses, and is entirely beyond the capacity of one not learned in the law to determine, an executor, even if armed with the power conferred by this will, would naturally seek advice and counsel. Counsel would undoubtedly interpret the will according to the rules laid down by the courts, as he understood them. If the executor should abuse the power given him, should be guilty of actual fraud, the courts would surely have a right to interfere. Why can they not do so if the executor should make a mistake? The right to resort to the courts for the protection of one's interests is one of the inalienable rights. A person cannot part with this right by agreement in advance.

In the case of Rea's Appeal, 13 W. N. C. 546, which was a bill in equity for an account and conveyance of trust property, the agreement between the settler and the trustee contained a provision that if the trustee failed to account and divide the fund in hand after three years, distribution should be " decreed by the court of Butler county under the law of the land." Suit was brought in Allegheny county and the defendant pleaded to the jurisdiction of the court. The court below sustained the plea. Upon appeal to the Supreme Court the decree of the court below was reversed. Justice CLARK, delivering the opinion of the court, said: " The general jurisdiction of the several courts of the commonwealth is established by law, not only for the security of private rights, but, by securing these, for the promotion of the good order and peace of society. It is against public policy, therefore, that parties should, by the terms of a private agreement in advance, oust their jurisdiction. If such an agreement may be made by one person, it may be made as to all, by adding to a personal covenant that the parties are not to be responsible before any tribunal for a breach of it. The right to resort to the ordinary legal tribunals for

redress of injuries, and protection of personal rights, is one of the inalienable rights of the citizen, and he can no more relinquish that general right in advance, by agreement, than he can barter away his life or his personal liberty; every such agreement must, upon consideration of public policy, be illegal and void."

It will be noticed in this case that the agreement was made by the settler, not by the beneficiaries. But the suit was brought by the beneficiaries, the settler not joining. The parties whose rights it was held could not be relinquished in advance by agreement, were the beneficiaries, who were not parties to the agreement. They were in exactly the same position as are the beneficiaries under this will.

But their case was not so strong as was the case of these legatees, for they had one court open to them under the agreement; these legatees have none at all. The language of the court goes much further than is necessary in this case. The court says that "parties" cannot, by private agreement in advance, oust the jurisdiction of the courts; that it cannot voluntarily enter into such agreements. Here the parties, the legatees, have had their rights taken from them by another against their wishes. If they cannot by voluntary agreement oust the jurisdiction of the courts, it is impossible to see how any one can legally do so for them.

Justice CLARK further says: "It is certainly true, however, that a matter in controversy or a pending civil suit may be finally submitted to arbitration, or to the decision of a single judge, or, by omitting to exercise their rights, the parties may waive them, as they choose, but they cannot, by agreement in advance, when no matter of dispute or controversy has yet arisen, forfeit their rights to a proper adjudication in the appropriate tribunal established by law, when a proper case may be presented."

If these legatees had, then, after the probate of testator's will, agreed among themselves that they would submit all questions arising under this will to the decision of the executor, and that decision to be final, thus ousting the jurisdiction of all the courts of this commonwealth, that agreement, under the authority of this case, would not be binding upon them.

There is a line of cases of which the most familiar involve

building contracts or partnership matters, in which a person is agreed upon, in advance, to whom all matters in dispute shall be referred, and whose award shall be final. They are recognized and commented upon in Rea's Appeal. Such agreements are looked upon by the courts with approval, as affording a most appropriate method of adjusting or liquidating the amount to be due. But the principle involved in these cases does not close the access of the parties to the courts of law, as the award of the arbitrator is only enforceable there. Such agreements are in writing, and when the very terms of the written instrument under which the submission is had are obscure or conflicting and require construction, I take it that questions thus arising can only be determined by the courts. The duty of the referee in such cases is to ascertain facts, not pass upon matters of construction involving purely legal questions. Such questions are still for the courts, notwithstanding the submission.

Rea's Appeal undoubtedly controls this case, and I therefore hold that the executor of Dennis Reilly's will has no legal authority, under the twenty-first clause, to decide the question raised in this petition.

I, therefore, recommend a decree be made, awarding the fund of $40,000, with accrued interest, to the children of John Reilly now surviving, to wit: T. Wallace Reilly, Mary A. Reilly, Margaret R. Brown, Edward D. Reilly, Elizabeth Reilly, John B. Reilly and Richard M. Reilly, as prayed for in said petition, the share due John B. Reilly to be paid to his assignee, Edward D. Reilly.

Exceptions to the auditor's report were sustained by the court in an opinion by SCOTT, J., who refused to make distribution of principal, and directed the executors to pay income to the children of John Reilly, surviving the death of William H. Reilly.

*Error assigned* was the decree of the court.

*W. U. Hensel*, with him *H. M. North*, *H. J. Steele*, and *E. D. Reilly*, for appellant.—A mistake in a will cannot be corrected unless it clearly appears by fair inference from the whole.

The result of all the cases in regard to supplying words seems to be that it cannot be done unless there has clearly been an omission, and also clear what the precise omission was: Mur-

gitoyd's Estate, 1 Brewster, 317; Jackson v. Hoover, 26 Ind. 511; Heald v. Heald, 56 Md. 300; Greenough v. Cass, 64 N. H. 326; Aulick v. Wallace, 12 Bush (Ky.), 531; Cheesman v. Wilt, 1 Yeates, 411; Jarman on Wills, pp. *451, *461; Varner's Appeal, 87 Pa. 422; Sturgis v. Work, 122 Ind. 134; Stuart v. Brown, 42 N. Y. Supp. 365; Cody v. Bunn, 18 Atl. Rep. 857; Kelly v. Kelly, 8 Kulp. 362; Broom's Legal Maxims, page 559; Hellerman's Appeal, 115 Pa. 120; Weidman's App., 42 Legal Int. 338; Taylor v. Taylor, 63 Pa. 481; Rewalt v. Ulrich, 23 Pa. 388; McFarland's App., 37 Pa. 300; Caldwell v. Ferguson, 2 Yeates, 380; Rapp v. Rapp, 6 Pa. 45; Deihl v. King, 6 S. & R. 29.

The real inquiry in this case is what was the intention of the testator when he made the provision contained in the twenty-first clause, or rather, what is the meaning of the language that he used to express his intention. Woelpper's Appeal, 126 Pa. 562; Hancock's Appeal, 112 Pa. 532.

In doubtful cases legacies are to be held vested rather than contingent, absolute rather than defeasible, and the law favors such a construction as will render estates alienable: Still v. Spear, 45 Pa. 170; Smith's App., 23 Pa. 9; Reck's Appeal, 78 Pa. 435; Huber's Appeal, 80 Pa. 348; Sponsler's Appeal, 107 Pa. 95; King v. King, 1 W. & S. 207; Pleasonton's Appeal, 99 Pa. 362.

Where there are two clauses in a will which are so inconsistent with each other that it is impossible to give effect to both, the former must give way to the latter, because the latest manifestation of the will of the testator is to control: Stickle's Appeal, 29 Pa. 234; Newbold v. Boone, 52 Pa. 167; Horwitz v. Norris, 60 Pa. 261; 1 Jarman on Wills, 411; Lewis's Estate, 3 Wharton, 162; German v. German, 27 Pa. 116.

It has been held that where the gift of interest is distinct and the transfer of the principal sum is to be made upon a condition named, the legacy is held to be contingent: King v. King, 1 W. & S. 207; Pleasonton's Appeal, 99 Pa. 362.

If we are to seek for the intention of the testator, in the language of his will, we must conclude he gave no vested interest to the issue of the children of John Reilly, but that the remainder to them was contingent upon none of the children dying without issue: Pleasonton's Appeal, 99 Pa. 362; List v. Rodney, 83 Pa. 483.

*Russell C. Stewart*, for appellee.—While the gift is but a gift of the annual interest on $40,000, and while there are no trustees expressly named and no words which refer to the fund as a trust fund, yet the following authorities show that the executors have acted properly in holding this money in trust: Livezey's App., 106 Pa. 201; Eichelberger's Est., 135 Pa. 160; Ritter's Est., 148 Pa. 577; Eachus's App., 91 Pa. 105; Myers's App., 49 Pa. 111.

When it is the manifest intent of a testator to sever the product from its source, a bequest of the income of an estate will not carry an absolute estate in the principal: Bentley v. Kauffman, 86 Pa. 99.

The learned court below adds three words " his share in," to the twenty-first clause in order to get at testator's intention. We think he was clearly right in so doing: Hellerman's App., 115 Pa. 120; Middleswarth v. Blackmore, 74 Pa. 418; Sheetz's App., 82 Pa. 213; Ferry's App., 102 Pa. 207; Jones v. Strong, 142 Pa. 502; Stevens's App., 164 Pa. 214; Landis's App., 185 Pa. 399; Tyson's App., 191 Pa. 227.

On the death of Dennis Reilly all the grandchildren of John Reilly had a vested interest in their parents' share of the principal which might have opened to let in grandchildren born after testator's death, but which cannot be divested as claimed, and which is not contingent on the happening of any event referred to in the twenty-first clause of the will. The children of John Reilly had the life estate, that is, were entitled to the interest of the fund, and were entitled to the contingent remainder in one share, to wit: William's, as long as he had no issue. When he died without issue the other children owned his share absolutely. This, it seems to us, was decided in Eachus's Appeal, 91 Pa. 105, Pleasonton's App., 99 Pa. 362, Mull v. Mull, 81 Pa. 393; Provenchere's App., 67 Pa. 463, McClure's App., 72 Pa. 415, and Letchworth's App., 30 Pa. 175.

The general intent of a will being ascertained, a particular inconsistent intent will be overlooked: Schott's Estate, 78 Pa. 40; Kline's Appeal, 86 Pa. 363; Miller's Appeal, 113 Pa. 459; Cox's Estate, 180 Pa. 139; York v. Weber, 195 Pa. 140.

OPINION BY MR. JUSTICE POTTER, July 17, 1901:

The controversy in this case arises upon the construction of

two clauses in the will of the decedent. The twelfth clause, which is as follows :

" I give and bequeath to the children of my late brother, John, now deceased, the annual interest of forty thousand dollars, to be divided between them, share and share alike, during their lives, and, upon the death of each one, I give one full share to his or her child, or children, share and share alike, the issue of any deceased to take the share of the parent."

And the twenty-first clause, which is:

"My executors are to define the provisions of this, my will, and their decision shall be final and conclusive upon all matters in it. They will construe " child or children " to be lawful issue, and in the sixth, eighth, ninth, eleventh and twelfth clauses, they will construe each in this manner. If one or more of the children of my brother John should die without lawful issue, the bequest of forty thousand dollars shall be equally divided among the surviving children of my said brother, John."

Under the twelfth clause, above quoted, a trust was created by the decedent for the benefit of the children of his brother John. Provision was made for the payment of the annual interest upon the sum of $40,000, to a class, viz : The children of John Reilly, and upon the death of each one of that class, one full share was given to his or her child, or children. The words " one full share " as here used, evidently meant one full share in the principal of the fund. Otherwise, there would be intestacy as to the principal. The intent to carry the corpus, or principal, over to others, clearly appears, and in such case, the words of the will must be permitted to have their proper force: Bentley v. Kauffman, 86 Pa. 101.

The children of John Reilly as a class, were the objects of the testator's bounty under the twelfth clause, and only such as were in being, at the time of the testator's death, could take. These, as a class, took the income, with remainder over, of the principal sum, to the issue of those comprising the class. This was the status, in so far as the twelfth clause was concerned. But the estate in remainder, so provided, was, by the language in the twenty-first clause, made subject to being defeated, by any member of the class dying without issue. A new contingency was thus imposed which prevented the remainder from becoming a vested one, so long as the contingency was liable

to happen.    Authority for this proposition is found in McBride
v. Smyth, 54 Pa. 248, in the language of Justice STRONG, who
said:

"This is not a mere postponement of the time of enjoyment.
It is a selection of individuals from a class to be donees of a
right; a description of persons, not a regulation of interest given.
It is impossible to admit that a gift to such a number of persons
as may meet a defined description, is a gift to all the persons,
whether they meet the description or not."

The rule of legal construction, as well as the testamentary
intent in such cases, is well stated in Smith on Executory In-
terests, page 281.    It is said: "Where real or personal estate is
devised or bequeathed to such children, or child, or individuals,
as shall attain a given age; or the children who shall sustain a
certain character, or do a particular act, or be living at a cer-
tain time, without any distinctive gift to the whole class, pre-
ceding such restrictive description, so that the uncertain event
forms part of the description of the devisee or legatee, the in-
terest so devised is necessarily contingent on account of the
person.    For until the age is attained, the character is sus-
tained, or the act is performed, the person is unascertained;
there is no person answering the description of the person who
is to take as devisee or legatee."

The contingency, upon the happening of which, the trust
created, by the twelfth clause was to cease, was the death of
one or more of the children of John Reilly, without issue.    That
event has happened in the death of William H. Reilly, without
issue.    Until the death of a member of the class, without issue,
the gift in remainder created by the twelfth clause of the will,
was contingent.    But, with the happening of the event, contem-
plated in the twenty-first section, came in force the gift of
$40,000, which, in the words of the testator, "shall be equally
divided among the surviving children of my said brother, John."
In clause twelve, reference was made to a share in the principal
sum.    But, in the twenty-first clause, the gift is not of a share
in, but of the whole bequest of $40,000, to be equally divided
as directed.    We are unable to agree with the learned court
below, that, in order to give effect to the intention of the testa-
tor, it is necessary to interpolate the words "his share in" so as
to make the clause of the twenty-first section read: "If one or

more of the children of my brother John, shall die without lawful issue (his share in) the bequest of forty thousand dollars shall be equally divided among the surviving children of my brother John."

The wording of the twenty-first clause, if considered by itself, shows the manifest intention of the testator, to limit the period of the trust created in the twelfth section; this limitation to be dependent upon the contingency of the death of one of the class, without lawful issue. In which event the principal sum was at once to be made payable to those, who, theretofore, had been receiving the income. The testator had a perfect right to terminate the trust, upon such a contingency, if he so desired. The language used by him is ample for the purpose. The meaning seems apparent and, as was said by our Brother MITCHELL, in Woelpper's Appeal, 126 Pa. 562:

"The question in expounding a will is not what the testator meant, but, what is the meaning of his words. By this it was never intended to say that the testator's meaning, when apparent, can be disregarded, but, that it cannot be got at aliunde, by what he may have meant, or even what, under the circumstances, perhaps he would have meant, but only by what he said."

And in Huber's Appeal, 80 Pa. 348: "When the meaning is clear, from language that is unmistakable, the instrument interprets itself."

In Reck's Appeal, 78 Pa. 432, Justice SHARSWOOD says: "All mere technical rules of construction must give way to the plainly expressed intention of the testator, if that intention is lawful. It is a rule of common sense, as well as law, not to attempt to construe that which needs no construction."

By the death of William H. Reilly, without lawful issue, the contingency contemplated by the testator has arisen; and the bequest of $40,000, is distributable to the surviving children of John Reilly.

The jurisdiction of the court to determine the matter in controversy, was questioned in the trial below, by reason of the attempt of the testator to confer exclusive authority upon the executors to define the provisions of the will, and make their decision final and conclusive. The learned court below held that the orphans' court had jurisdiction in this matter. No ex-

ception appears to have been taken to this ruling, and the claim does not seem to be strongly pressed, here.

We are clear that this controversy is properly here for adjudication. A testator may not deny to his legatees the right of appeal to the regularly constituted courts. Ample authority may be found for this statement in Mentz v. Armenia Fire Ins. Co., 79 Pa. 480, Rea's Appeal, 13 W. N. C. 546, Cooley's Cons. Lim. * 410, and Hoagland v. Creed, 81 Ill. 506, etc.

The argument of the learned counsel for the appellee is thorough and ingenious in justification of the interpolation of the additional words "his share in," as applied to the bequest in clause twenty-one. But we cannot concede the necessity for any such construction. We think the words of the clause are plain enough in themselves to be intelligible, and, therefore, under the authorities, nothing can be supplied by intendment.

The decree of the orphans' court is reversed, and the record is remitted, that a decree may be entered in accordance with this opinion, awarding the fund of $40,000, with accrued interest, to the children of John Reilly, now surviving, or their assignees.